Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Mark T. Johnson (SBN 076904)
mjohnson@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Catherine Cabalo (SBN 248198)
ccabalo@peifferwolf.com
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel: (415) 766-3592
Fax: (415) 840-9435

Linda M. Dardarian (SBN 131001)
ldardarian@dhkl.law
Andrew P. Lee (SBN 245903)
alee@dhkl.law
Katharine F. Trabucco (SBN 305413)
ktrabucco@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612-3536
Tel: (510) 763-9800
Fax: (510) 835-1417

Shawna Parks (SBN 208301)
sparks@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704
Tel: (510) 665-8644
Fax: (510) 665-8511

Attorneys for the Plaintiffs and the Proposed Class

UNITED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL CURRAN, NICOLE BROWN-BOOKER, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND,<br><br>       Defendant. | **CLASS ACTION**<br><br>Case No.: 23-cv-02354-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 4, 2025<br>Time:    1:30 p.m.<br>Dept:    Courtroom 3<br>Before:  Hon. Richard Seeborg<br><br>Trial Date:   None set |

# <u>TABLE OF CONTENTS</u>

Page

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

III.    SUMMARY OF PROPOSED SETTLEMENT ......................................................... 4

        A.      The Settlement Class ..................................................................................... 4

        B.      Injunctive Relief ............................................................................................ 5

                1.      Installation and Remediation of Pedestrian Right of Way ................ 5

                2.      Prioritization .................................................................................... 6

                3.      Review and Approval ......................................................................... 6

                4.      Access Request System ..................................................................... 7

                5.      Maintenance ....................................................................................... 7

                6.      Training ............................................................................................. 7

                7.      Reporting and Monitoring ................................................................. 8

                8.      Dispute Resolution ............................................................................ 8

        C.      Release of Class Claims ................................................................................ 8

        D.      Payments to Plaintiffs Curran and Brown-Booker ....................................... 9

        E.      Class Counsel's Attorneys' Fees, Expenses, and Costs ................................ 9

IV.     ARGUMENT .............................................................................................................. 9

        A.      The Settlement Class Merits Class Certification. ........................................ 10

                1.      Plaintiffs' Claims Are Inherently Systemic and Therefore Appropriate
                        for Class-Wide Resolution. ............................................................. 10

                2.      The Requirements of Rule 23(a) Are Met. ...................................... 11

                        a.      The Settlement Class Is Sufficiently Numerous. .................. 11

                        b.      There Are Questions of Law and Fact Common to the Class. .............. 11

                        c.      Plaintiffs' Claims Are Typical of the Class. ......................... 12

                        d.      Plaintiffs Are Adequate Class Representatives. ................... 13

3.    Plaintiffs' Counsel Are Adequate to Represent the Class and Satisfy the Requirements of Rule 23(g). ........................................................................ 13

4.    The Requirements of Rule 23(b)(2) Are Satisfied. ......................................... 15

B.    The Consent Decree Is Fair, Reasonable, and Adequate, and Should Be Approved. .......................................................................................................... 15

1.    Class Counsel Have Adequately Represented the Settlement Class, and Their Experience and Views Support Approval. .............................................. 16

2.    The Consent Decree Was Negotiated at Arm's Length. ................................. 17

3.    The Consent Decree Represents an Outstanding Result for the Settlement Class. .............................................................................................................. 18

4.    The Consent Decree Treats Class Members Equitably Relative to Each Other. .............................................................................................................. 21

5.    The Consent Decree Compares Favorably to Similar Settlements. ................ 21

C.    The Proposed Notice Satisfies Due Process and Should Be Approved. ...................... 24

V.    CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ................................................................................................11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................15

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ........................................................................................10, 12

*Barden v. City of Sacramento*,
  292 F.3d 1073 (9th Cir. 2002) ...........................................................................................11

*In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................................9, 16, 17, 18

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
  249 F.R.D. 334 (N.D. Cal. 2008) ................................................................................ *passim*

*Castaneda v. Burger King*,
  No. 3:08-cv-04262, 2010 WL 2735091 (N.D. Cal. July 12, 2010) ....................................19

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................................24

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................................................10

*In re Hyundai and Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...............................................................................................9

*Laguna v. Coverall N. Am., Inc.*,
  753 F.3d 918 (9th Cir. 2014) .......................................................................................17, 18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ......................................................................................................24, 25

*Muniz v. UPS*,
  738 F.3d 214 (9th Cir. 2013) .............................................................................................20

*In re MyFord Touch Consumer Litig.*,
  No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. March 28, 2019) .........................21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................................16

iii

PLS.' MOT. IN SUPP. OF PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT; MEM. OF P. AND A. IN SUPPORT
CASE NO. 23-CV-02354-RS

933353.11

*Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ............................................................................................15

*O'Connor v. Uber Techs., Inc.,*
    201 F. Supp. 3d 1110 (N.D. Cal. 2016)......................................................................10

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ......................................................................................15

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ......................................................................................16

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................................................15, 21

*Uschold v. NSMG Shared Servs., LLC,*
    333 F.R.D. 157 (N.D. Cal. 2019) ...............................................................................19

*Villalpando v. Exel Direct Inc.,*
    303 F.R.D. 588 (N.D. Cal. 2014) ...............................................................................11

*Wal-Mart, Inc. v. Dukes,*
    564 U.S. 338 (2011) ............................................................................................ *passim*

*Walters v. Reno,*
    145 F. 3d 1032 (9th Cir. 1988) ...................................................................................15

*Willits v. City of L.A.,*
    No. 2:10-cv-05782, 2011 WL 7767305 (C.D. Cal. Jan. 3, 2011) .............................. *passim*

**Docketed Cases**

*Californians for Disability Rts., Inc. v. Ca. Dep't of Transp.,*
    No. 4:06-cv-05125, ECF No. 515 (N.D. Cal. Dec. 2, 2009) .........................................23

*Goodlaxson et al. v. Mayor and City Council of Baltimore,*
    No. 1:21-cv-01454, ECF No. 154 (D. Md. Mar. 21, 2025).......................................22, 24

*Liberty Res., Inc. v. City of Philadelphia,*
    No. 2:19-cv-03846, ECF No. 163 (E.D. Pa. May 1, 2023) ...........................................22

*Ochoa v. City of Long Beach,*
    No. 2:14-cv-04307, ECF No. 175 (C.D. Cal. Oct. 17, 2017)........................................23

*Ochoa v. City of Long Beach,*
    No. 2:14-cv-04307-DSF (C.D. Cal.) ...........................................................................19

*Ochoa, et al. v. City of Long Beach,*
    No. 2:14-cv-04307-DSF-FFM (C.D. Cal. Sept. 15, 2015)........................11, 15, 20, 22

*Willits v. City of Los Angeles*,
  No. 2:10-cv-05782, ECF No. 415 (C.D. Cal. Aug. 26, 2016)......................................23

**Federal Statutes**

Americans with Disabilities Act ......................................................................... *passim*

**Rules**

Fed. R. Civ. P.
  23 ................................................................................................................1, 10, 15
  23(a)................................................................................................................10, 11
  23(a)(1)..............................................................................................................11
  23(a)(4)..............................................................................................................13
  23(a)-(b)..............................................................................................................10
  23(b)..................................................................................................................10
  23(b)(2)..........................................................................................................10, 15
  23(c)(2)(B)..........................................................................................................24
  23(c)(3)..............................................................................................................24
  23(e)................................................................................................................2, 15
  23(e)(1)..............................................................................................................24
  23(e)(2)..................................................................................................10, 15, 16, 21
  23(e)(2)(A)..........................................................................................................16
  23(e)(2)(B)..........................................................................................................17
  23(e)(2)(C)......................................................................................................18, 21
  23(e)(3)..............................................................................................................18
  23(g)..............................................................................................................13, 15
  23(g)(1)(A)..........................................................................................................13
  23(h)....................................................................................................................9
  23(h)(1)..............................................................................................................25

**Regulations**

28 C.F.R.
  § 35.151..............................................................................................................12

45 C.F.R.
  § 84.23................................................................................................................12

Cal. Code Regs. tit. 2
  § 11197................................................................................................................12
  § 11198................................................................................................................12

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on September 4, 2025 at 1:30 p.m., in the Courtroom of the Honorable Richard Seeborg of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Plaintiffs Michael Curran and Nicole Brown-Booker will and hereby do move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order: (a) granting preliminary approval of the parties' proposed class action Consent Decree and the exhibits attached thereto (collectively, "Consent Decree" and filed concurrently herewith) entered into between the parties; (b) certifying the proposed Settlement Class and appointing Plaintiffs and their counsel as representatives of the Settlement Class; and (c) approving the parties' proposed notice program, including the proposed form of notice, as set forth in the Consent Decree, and directing that notice be disseminated pursuant to such program. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, including all exhibits thereto, the accompanying declarations of Linda M. Dardarian ("Dardarian Decl."), Guy B. Wallace ("Wallace Decl."), Catherine Cabalo ("Cabalo Decl."), Shawna Parks ("Parks Decl."), Michael Curran ("Curran Decl."), and Nicole Brown-Booker ("Brown-Booker Decl."), the argument of counsel, all papers and records on file in this case, and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Michael Curran and Nicole Brown-Booker ("Plaintiffs") seek preliminary approval of a proposed Consent Decree that requires the Defendant City of Oakland ("Defendant" or "the City") to make sweeping improvements to its pedestrian right of way over the next twenty-five years that will ensure that the City's sidewalks and street crossings are fully and equally accessible to people with mobility disabilities. Despite the City's current significant fiscal distress, in this settlement the City has committed to remediate all street crossings in the pedestrian right of way that are missing or have inaccessible curb ramps, make accessible all sidewalks and crosswalks that the City knows to be damaged, and to complete all of this work by the end of 2050. This includes at least 12,738 curb ramps and 78,531 stretches of sidewalk (covering 2,075,000 square feet) that the City identified in 2021-2022 surveys as being inaccessible (curb ramps) or damaged (sidewalks). In doing this work, expected to

1

cost between $157.4 and $325.7 million, the City will prioritize the most severe access barriers, those serving public government offices and facilities, transportation corridors, places of public accommodation, and employers, and those impacting underserved populations.  Settlement Class Members and those acting on their behalf will have the opportunity to request that curb ramps and pedestrian walkways be installed or remediated at specific locations, and the City is obligated to resolve these requests promptly.  The City will be required to inspect any newly installed or remediated curb ramps and sidewalk segments and will only approve them if they meet disability access standards.  The City will also train relevant City officials and employees regarding its access policies, procedures, and obligations.  The Consent Decree also includes mechanisms for reporting, monitoring, and dispute resolution to ensure that the parties comply with their obligations to the Settlement Class throughout the 25-year term of the Consent Decree.

Balanced against the cost, delay, and risks of further litigation, the injunctive relief provided by the Consent Decree is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e) and satisfies all of the criteria for preliminary settlement approval.  Accordingly, the parties respectfully request that the Court: (i) preliminarily approve the settlement; (ii) certify the proposed Settlement Class and appoint the Named Plaintiffs as Settlement Class Representatives and Plaintiffs' attorneys as Class Counsel; and (iii) approve the proposed form of the class notice and distribution plan.

## II.    BACKGROUND

Plaintiffs and proposed Settlement Class Representatives Curran and Brown-Booker are longtime residents of the City of Oakland and persons with mobility disabilities who use wheelchairs for mobility.  *See* Curran Decl. ¶ 2; Brown-Booker Decl. ¶ 2.  They have both encountered pedestrian right of way barriers throughout Oakland that impede their ability to access the City and go about living their lives.  *See* Curran Decl. ¶¶ 3-10; Brown-Booker Decl. ¶¶ 3-18.  They both regularly encounter street corners that are missing curb ramps or have curb ramps that are too steep, too narrow, damaged, or uplifted, as well as sidewalks and crosswalks that that are raised or uplifted because of tree roots, potholes, and uneven surfaces, that are too narrow or impassable because of obstructions, or that have excessive cross-slopes that make it difficult or unsafe for wheelchair users to traverse.  *See* Curran Decl. ¶¶ 3-10; Brown-Booker Decl. ¶¶ 3-18.  These barriers have caused them great distress, frustration, and

pain as they have been forced to attempt very carefully to navigate inaccessible paths of travel, go out of their way to avoid pedestrian right of way barriers, endanger their safety by traveling in the street with traffic when they could not avoid inaccessible rights of way, or risk finding themselves lying on the pavement because damaged or uplifted concrete or pavement caused their wheelchairs to topple over.  *See* Curran Decl. ¶¶ 3-10; Brown-Booker Decl. ¶¶ 3-18.  This is the unfortunate reality that all persons with mobility disabilities who use wheelchairs, scooters, or other mobility devices face when they try to traverse the City's pedestrian right of way to live in, work in, or visit Oakland.  *See* Dardarian Decl. ¶¶ 3-4.

In 2017, Plaintiffs and their Counsel began actively investigating whether the City of Oakland violated federal and state disability access laws by failing to make its pedestrian facilities that were newly constructed or altered since the effective date of those laws fully and equally accessible to people with mobility disabilities, and by failing to maintain the accessibility of its newly constructed or altered pedestrian facilities.  *See* Dardarian Decl. ¶ 4.  On June 7, 2019, Class Counsel sent the City a letter asserting that Plaintiffs and other City residents and visitors with mobility disabilities have been denied access to the City's pedestrian right of way because of a lack of accessible sidewalks, curb ramps, and crosswalks throughout the City.  *See id.* ¶ 4 & Exs. 1-2.  Plaintiffs' letter outlined the manner in which the City's inaccessible pedestrian right of way violated the City's obligations under the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and parallel California disability nondiscrimination laws at Government Code sections 11135 *et seq.* ("Section 11135"), which each require that public entities provide full and equal access to their newly constructed and altered pedestrian facilities for persons with mobility disabilities and to maintain the accessibility of those facilities.  *See id.* ¶ 4 & Ex. 2.  Plaintiffs invited the City to work cooperatively toward a binding class action settlement agreement resolving Plaintiffs' injunctive relief claims without formal litigation.  *See id.* ¶ 5 & Ex. 1, Consent Decree at 1.  The City agreed, and the Parties engaged in informal discovery as part of their effort to resolve these claims.  *See id.*  Pursuant to Plaintiffs' requests, the City provided, and Plaintiffs reviewed 120,000 pages of documents, including access surveys, transition plan documents, memoranda and reports from City officials, paving databases, design documents and other pertinent information regarding the accessibility of the City's pedestrian right of way.  *See id.*; *see also* Wallace Decl. ¶ 9.

Plaintiffs also hired certified access consultants (CASps) to inspect portions of the City's pedestrian right of way.  *See* Dardarian Decl. ¶ 5.  However, the Parties did not settle at that time.  *See id.*

Accordingly, on May 15, 2023, Plaintiffs filed a class action complaint alleging violations of the ADA, Section 504, and Section 11135 based on the City's failure to construct, alter, and maintain sidewalks, curb ramps and crosswalks throughout the City's pedestrian right of way that are accessible to people with mobility disabilities.  ECF No. 1; *see also* Dardarian Decl. Ex. 1, Consent Decree at 1. The Parties continued to engage in settlement negotiations and exchanged additional information, including the City's comprehensive survey of curb ramp accessibility and sidewalk damage throughout its pedestrian right of way in 2021-22 and budgeting and other financial documents, and from Plaintiffs' further inspections of curb ramp and sidewalk accessibility.  *See* Dardarian Decl. ¶ 7 & Ex. 1, Consent Decree at 1.  Between August 2023 and June 2025, the Parties attended seven (7) mediation sessions with retired Magistrate Judge Edward A. Infante, ultimately reaching an agreement on injunctive relief on April 16, 2025, after which they began separately negotiating payments to the Named Plaintiffs and Plaintiffs' reasonable attorneys' fees and costs.  *See id.* ¶ 8; *see also* Wallace Decl. ¶¶ 9-11.  On July 21, 2025, the Parties executed the final Class Action Consent Decree.  *See* Dardarian Decl. ¶ 8 & Ex. 1.

### III.    SUMMARY OF PROPOSED SETTLEMENT

The Consent Decree, attached in full as Exhibit 1 to the Dardarian Declaration filed herewith, includes the following negotiated and agreed-upon terms:

### A.    The Settlement Class

As set forth in the Consent Decree, the Settlement Class is defined as: all persons (including residents of and/or visitors to the City of Oakland) with any Mobility Disability,[1] who, at any time prior to court judgment granting final approval to this Consent Decree or during the Term of the Consent Decree have been denied full and equal access to the City's pedestrian right of way due to the lack of a Curb Ramp or a Curb Ramp or Pedestrian Walkway that was damaged, in need of repair, not Accessible, or otherwise in a condition not suitable or sufficient for use.  Consent Decree § 4.24.  The

---

[1] Capitalized terms are defined in Section 4 of the Consent Decree.

4

933353.11

Pls.' Mot. for Prelim. Approval of Class Action Settlement; Mem. of P. and A. in Support
Case No. 23-cv-02354-RS

Settlement Class seeks injunctive relief only; it does not seek damages and the Settlement Class does not release any damages claims.  Dardarian Decl. ¶ 10.

**B.**     **Injunctive Relief**

      **1.**     **Installation and Remediation of Pedestrian Right of Way**

      The Consent Decree ensures that the City will remediate all missing and non-compliant curb ramps by 2050.  Consent Decree § 6.1.  Specifically, the City shall ensure that each of the 12,738 curb ramps determined not to be compliant in the City's 2021-2022 Curb Ramp Survey will be made accessible, unless located adjacent to a street with no pedestrian walkway or a street crossing not for pedestrian use.  *See id.* Within fifteen years, by 2040, the City has committed to making fully accessible the 10,833 to 11,468 curb ramps (85-90%) that can be made accessible using a standard curb ramp design plan, with the City remediating 500 curb ramps per year from July 2025 through July 2027, 750 curb ramps per year from July 2027 through July 2029, and 925 curb ramps per year from July 2029 through June 2040 ("Curb Ramp Annual Commitment").  *Id.* § 6.1.1.  For the 1,270 to 1,905 curb ramps (10-15%) that can only be made accessible using a non-standard, engineered curb ramp design, the City will install or remediate curb ramps at those locations by the end of 2050.  *See id.*

      By 2050, the City will remediate damage to existing sidewalks – identified at 78,531 locations and affecting approximately 2,075,000 square feet of sidewalks in the City's 2021-2022 Sidewalk Survey – by repairing a minimum of 85,000 square feet of damaged sidewalks per fiscal year ("Sidewalk Annual Commitment").  Consent Decree § 7.1.1.  The City will also remediate barriers as part of its ongoing sidewalk remediation projects, and implement or maintain additional programs to ensure the removal of sidewalk barriers throughout Decree's term.  *Id.* § 7.2.

      Throughout the term of the Consent Decree, whenever a crosswalk within City limits is altered, the City will ensure that the crosswalk is accessible, even if the alteration does not span the full width, length, or intersection of the relevant street, road, or highway.  Consent Decree §§ 7.3.1-2.  Likewise, whenever the City or its agent newly constructs or alters a pedestrian right of way, the City will ensure it is accessible and also has accessible curb ramps if it crosses a curb or is adjacent to a corner where pedestrians are permitted to cross the street.  *Id.* § 8.2.  The City will ensure that in any areas where installing a fully compliant curb ramp or sidewalk is structurally impracticable or technically infeasible,

5

Pls.' Mot. for Prelim. Approval of Class Action Settlement; Mem. of P. and A. in Support
Case No. 23-cv-02354-RS

the newly installed or altered facility will be made accessible to the maximum extent feasible. *Id.* § 8.4.

Finally, the City will only give approval to permitted third-party projects that include work on

pedestrian rights of way if the work meets disability access standards. *Id.* § 8.5. To the extent such

projects obstruct the pedestrian right of way, the City shall ensure that alternative accessible temporary

routes are provided through and around such projects, are only marginally longer than the permanent

route, and shall provide signage identifying the alternative route. *Id.* § 14.

Based on the City's estimates of the average costs per standard curb ramp, engineered curb

ramp, and square foot of sidewalk, the work to make Oakland's pedestrian right of way accessible over

the 25-year term of the Decree will cost approximately $157.4 million to $325.7 million, not including

additional construction or pedestrian right of way barriers identified beyond those in the City's 2021-

2022 surveys. *See* Dardarian Decl. ¶¶ 13, 15-16.

### 2. **Prioritization**

The Consent Decree requires the City to prioritize its Annual Commitment work consistent with

ADA regulations and take into account equity considerations to ensure that the access work benefits the

City's underserved populations. Consent Decree § 10.1. The City will also prioritize the remediation

of High Priority Barriers, such as installing curb ramps where there are none, remediating existing curb

ramps with landings that overlap with traffic lanes, and remediating excessive curb ramp and sidewalk

slopes and uplift. *Id.* §§ 10.2.1-2.

### 3. **Review and Approval**

The City will ensure that all curb ramps and pedestrian walkways installed or remediated by the

City or its agents comply with federal and state disability access standards by requiring their design and

construction to be subject to City review and approval, inspecting them within thirty (30) days of

receiving notice of their completion, and if found not accessible, requiring that the curb ramp or

walkway be made accessible within thirty (30) days of notification by the City. Consent Decree §§

11.1-3. Only installed or remediated curb ramps or walkways that are approved through this process

will count towards the City's Annual Commitments. *Id.* § 11.4.

933353.11

4. **Access Request System**

The Consent Decree requires the City to maintain an Access Request System for persons with mobility disabilities or those acting on their behalf to easily submit requests that the City install, remediate, or maintain accessible curb ramps and walkways.  Consent Decree § 12.1.  The Decree further requires the City to promptly investigate, respond to, and fulfill requests.  *Id.* §§ 12.2-12.6.  The City shall address each barrier – including as part of a scheduled construction or alteration project – within one-hundred eighty (180) days of the submission of the request, except where the cost of improvements will exceed $100,000, in which cases the City has one year to address the barrier.  *Id.* § 12.7.  In cases of structural impracticability or technical infeasibility, the City will make the walkway or curb ramp accessible to the maximum extent feasible, will notify the requestor it has done so, and document its findings and make them available to Class Counsel.  *Id.* § 12.8.

5. **Maintenance**

The Consent Decree requires the City to maintain all Accessible Pedestrian Facilities over which it has responsibility, ownership or control so that those facilities are readily accessible to and usable by persons with Mobility Disabilities, except for isolated or temporary interruptions in access due to maintenance or repairs.  Consent Decree § 13.1.  Within one-hundred eighty (180) days of becoming aware of any High Priority Barriers in the City's pedestrian right of way, the City shall ensure the barriers' removal unless it is already being addressed through a sidewalk remediation project that may take more time.  *Id.* § 13.2.  If Accessible Pedestrian Facilities are not available due to maintenance or repairs, the City must provide an alternative accessible route.  *Id*. § 13.1.  The City shall ensure any alternative accessible route is only marginally longer than the permanent route and must identify the alternative route through signage at the subject location.  *Id*. § 14.

6. **Training**

The Consent Decree requires training of all City officials and employees who are responsible for performing or inspecting the pedestrian right of way on various topics, including: the Decree; the City's accessible design standards and their importance to people with mobility disabilities; procedures for ensuring that newly constructed or altered Pedestrian Facilities are accessible; when street resurfacing projects trigger the obligation to install or remediate curb ramps; as well as the City's policies and

933353.11

procedures for prioritizing curb ramp and sidewalk installation and remediation, responding to and fulfilling Access Requests, inspecting the right of way if applicable, maintaining accessible pedestrian rights of way, providing alterative accessible temporary routes, and identifying and removing High Priority Barriers in the pedestrian right of way.  Consent Decree §§ 15.1-2.

### 7. **Reporting and Monitoring**

The Consent Decree requires the City to provide regular, detailed written reporting on the status of the City's compliance with the Consent Decree.  Consent Decree §§ 17.1.  Additionally, the City will maintain a database that identifies and tracks the conditions of aspects of its pedestrian right of way and provide Class Counsel with information from the database upon their reasonable request.  *Id.* §§ 16.1-16.2.  The City is also required to notify Plaintiffs and Class Counsel of any changes to the City's standard drawings or designs for accessible pedestrian rights of way and provide them with the updates.  *Id.* § 18.

### 8. **Dispute Resolution**

The Court will retain jurisdiction to enforce the Consent Decree.  Consent Decree § 3.2.  If either Party believes that a dispute exists over Decree compliance, it will provide written notice and a timeline to cure the alleged violation.  *Id.* § 19.1.  If the violation or failure continues after a meet and confer period, either Party may notify the other in writing of its intent to enforce the Consent Decree and thereafter file a motion with the Court.  *Id.* § 19.2.

## C. **Release of Class Claims**

In exchange for the injunctive relief proposed in the Consent Decree, Plaintiffs and Settlement Class Members shall release any injunctive, declaratory, or non-monetary claims against the City that were brought, could have been brought, or could be brought now or in the future by the Settlement Class relating to the accessibility of the City's curb ramps and pedestrian walkways through the end of the Term.  Consent Decree §§ 24.1-24.2.  The release excludes claims to enforce the Decree and claims for monetary damages, personal injuries or property damage with respect to unnamed Settlement Class Members.  *Id.* § 24.3.  It also excludes claims based on or arising from missing or inaccessible curb ramps and pedestrian walkways that may remain in existence after the expiration of the Term of the Consent Decree.  *Id.*

**D.    Payments to Plaintiffs Curran and Brown-Booker**

Subject to Court approval, the City will pay $35,000 each to Plaintiffs Curran and Brown-Booker in recognition of the services they have rendered to the Settlement Class as well as in exchange for Plaintiffs' releasing all claims for monetary relief, including personal injury claims, in addition to their releasing the injunctive, declaratory, and non-monetary claims.  Consent Decree §§ 23-25.  Class Counsel will file a separate motion for approval of the proposed individual awards along with their motion for reasonable attorneys' fees, expenses, and costs.  *See id.* § 23.  These payments will not come out of the Annual Commitments but will instead by paid separately by the City.  Dardarian Decl. ¶ 33.

**E.    Class Counsel's Attorneys' Fees, Expenses, and Costs**

Plaintiffs will move separately for an award of reasonable attorneys' fees, expenses, and costs in the amount of $2,008,000, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure.  *See* Consent Decree ¶ 26; Dardarian Decl. ¶¶ 34 & § IV; *see also* Northern District of California's Procedural Guidance for Class Action Settlements ("Settlement Guidance") ¶ 6.  Plaintiffs will seek reasonable attorneys' fees pursuant to the "lodestar" method.  *See, e.g.*, *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*, 654 F.3d 935, 941 (9th Cir. 2011).  Through July 18, 2025, Plaintiffs have incurred attorneys' fees of $2,145,323.50 and costs of $255,506.04, and so the amount sought will be less than fees and costs incurred to date, let alone the additional fees and costs that will be incurred between now and the effective date of the Consent Decree.  *See* Dardarian Decl. ¶¶ 75-79.  Plaintiffs will file their motion for reasonable attorneys' fees and costs so that class members have at least thirty-five (35) days after the motions are filed to object to the settlement and Plaintiffs' motion.  *See* Settlement Guidance ¶ 9.

The City will also pay Plaintiffs' reasonable attorneys' fees, expenses, and costs for work done in connection with monitoring the Consent Decree, subject to a cap of $125,000 per year, adjusted annually for inflation.  Consent Decree § 27.1.  The City shall also pay Class Counsel their reasonable attorneys' fees, expenses, and costs for work reasonably necessary to resolve disputes, if any.  *Id.* § 27.3.

## IV.    ARGUMENT

Settlement approval involves "a two-step process" in which the Court "first determines whether class action settlement deserves preliminary approval and then, after notice is given to class members,

9

933353.11

Pls.' Mot. for Prelim. Approval of Class Action Settlement; Mem. of P. and A. in Support
Case No. 23-cv-02354-RS

whether final approval is warranted." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121-2 (N.D. Cal. 2016); *see also* Manual for Complex Litigation (Fourth) §§ 21.632-634 (2004) ("Manual"). Preliminary approval requires two elements: first, the court must determine that the settlement class meets the requirements for class certification if it has not yet been certified, Fed. R. Civ. P. 23(a)-(b), and second, the court must determine that the settlement is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998), *overruled on other grounds by Wal-Mart, Inc. v. Dukes*, 564 U.S. 338 (2011).

## A.  The Settlement Class Merits Class Certification.

The Settlement Agreement makes no substantive changes to the class definition proposed in Plaintiffs' Complaint. *See* Settlement Guidance ¶ 1(a). In accordance with Federal Rule of Civil Procedure 23(a), class certification is proper if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the proposed class must be certifiable under one of the three sub-provisions of Rule 23(b). Here, the parties seek certification under Rule 23(b)(2), pursuant to which class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate to the class as a whole." Fed. R. Civ. P. 23(b)(2).

### 1.  Plaintiffs' Claims Are Inherently Systemic and Therefore Appropriate for Class-Wide Resolution.

Federal Rule of Civil Procedure 23 was designed for civil rights cases such as this one. The Ninth Circuit has explained that cases like this that allege systemic non-compliance with the ADA and Section 504 are well-suited to class certification because all of the factual and legal issues that will determine the public entity's liability focus exclusively on the defendant's acts and omissions. *See Armstrong v. Davis*, 275 F.3d 849, 868-70 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). Similarly, where the plaintiff alleges widespread barriers that are the result of system-wide policy failures, courts favor certification because they can assess the public entity's liability without having to separately adjudicate the effect of each alleged barrier on individual class members. *See, e.g., Californians*

10

1    *for Disability Rights, Inc. v. Cal. Dep't of Transp.* ("*Caltrans*"), 249 F.R.D. 334, 345-46 (N.D. Cal. 2008).

2    Accordingly, in cases such as this one, federal courts have repeatedly and routinely certified classes of

3    persons with mobility impairments affected by such barriers. *See, e.g.*, *Barden v. City of Sacramento*, 292

4    F.3d 1073 (9th Cir. 2002); *Caltrans,* 249 F.R.D. at 345; *Willits v. City of L.A.*, No. 2:10-cv-05782, 2011

5    WL 7767305, at * 3, n.5 (C.D. Cal. Jan. 3, 2011); Dardarian Decl. Ex. 7, *Ochoa, et al. v. City of Long*

6    *Beach*, No. 2:14-cv-04307-DSF-FFM (C.D. Cal. Sept. 15, 2015) (ECF No. 90).  In short, it is highly likely

7    that Plaintiffs' claims would be certified irrespective of settlement.

8        **2.    The Requirements of Rule 23(a) Are Met.**

9            **a.    The Settlement Class Is Sufficiently Numerous.**

10       Numerosity demands that a class be large enough that joinder of all members would be

11   impracticable. Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019.  In this district, courts have routinely

12   found that 40 class members is sufficient to meet the numerosity requirement.  *Villalpando v. Exel Direct*

13   *Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014).  There are approximately 65,679 individuals residing in

14   Oakland who have a mobility disability, and thousands more likely travel through Oakland each year.

15   *See* U.S. Census Bureau, American Fact Finder, Table B99185, Allocation of Ambulatory Difficulty for

16   the Civilian Non-institutionalized Population 5 Years and Over; Dardarian Decl. ¶ 36 & Ex. 3.  Such

17   evidence is sufficient to establish numerosity.  *See Caltrans*, 249 F.R.D. at 347; *Willits*, 2011 WL 7767305,

18   at *2.  Thus, the numerosity requirement of Rule 23(a) is satisfied.

19           **b.    There Are Questions of Law and Fact Common to the Class.**

20       The commonality prerequisite concerns the existence of questions of law and/or fact common to the

21   class and is "construed permissively."  *Hanlon*, 150 F.3d at 1019.  At least one common contention must be

22   capable of classwide resolution.  *Wal-Mart*, 564 U.S. at 350.  "[T]he key inquiry is not whether the plaintiffs

23   have raised common questions, . . . but rather, whether class treatment will 'generate common *answers* apt

24   to drive the resolution of the litigation.'"  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir.

25   2013) (quoting *Wal-Mart*, 564 U.S. at 351) (emphasis original).

26       Plaintiffs' claims set forth in the Complaint, raise several common issues of law and fact including:

27

28

11

933353.11

1.    Whether Defendant is violating the ADA, Section 504, and Section 11135 by failing to make its pedestrian rights of way readily accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities;

2.    Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 28 C.F.R. § 35.151, 45 C.F.R. § 84.23, and Cal. Code Regs. tit. 2 §§ 11197 & 11198, triggering an obligation to construct or remediate curb ramps in compliance with Uniform Federal Accessibility Standards, 1991 Americans with Disabilities Act Accessibility Guidelines, 2010 Americans with Disabilities Act Standards, and Title 24 of the California Building Code;

3.    Whether Defendant has maintained its pedestrian rights of way so that they are readily accessible to persons with mobility disabilities as required by the ADA, Section 504, and Section 11135;

4.    Whether Defendant has made reasonable modifications in policies, practices, and/or procedures to ensure that persons with mobility disabilities have full and equal access to its pedestrian rights of way.

These common questions of law and fact rely on common contentions that are not affected by the circumstances of any individual class member.  Such questions are therefore capable of generating common answers and thus are appropriate for class-wide resolution.  *Wal-Mart*, 564 U.S. at 351.

### c.    Plaintiffs' Claims Are Typical of the Class.

The typicality prerequisite is met if Plaintiffs' claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *see also Armstrong*, 275 F.3d at 868 (typical claim arises from same course of events and relies on similar legal arguments).  Like all members of the Settlement Class, Plaintiffs have a mobility disability and allege that they are routinely denied full and equal access to the City's pedestrian rights of way as a result of the City's systemic policies and practices regarding the construction, repair and maintenance of its pedestrian right of way.  *See* Curran Decl. ¶¶ 2-10; Brown-Brooker Decl. ¶¶ 2-18; Compl. ¶¶ 42-53, 60; *Caltrans,* 249 F.R.D. at 345; *Willits*, 2011 WL 7767305, at * 4.  Where Plaintiffs allege the same harm, rely on the same legal theories, and seek the same declaratory and injunctive relief as all members of the Settlement Class, they are typical.

933353.11

### d.    Plaintiffs Are Adequate Class Representatives.

The adequacy prerequisite requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Proposed class representatives may not have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs' interests are aligned with the putative class.  The harm Plaintiffs allege and the injunctive relief they request is generalizable to the entire Settlement Class.  Plaintiffs are committed to improving access for persons with mobility disabilities, have acted vigorously to pursue injunctive relief on behalf of the entire Settlement Class over a many-year period, and will monitor implementation of the Consent Decree if it is approved.  Curran Decl. ¶¶ 11-24; Brown-Booker Decl. ¶¶ 19-33.  They are not aware of any conflicts of interest that would affect their ability to fairly and adequately protect the interests of the Settlement Class.  Curran Decl. ¶ 15; Brown-Booker Decl. ¶ 23; *Caltrans*, 249 F.R.D. at 348; *Willits*, 2011 WL 7767305, at * 4.  Thus, they are adequate to represent the class.

### 3.    Plaintiffs' Counsel Are Adequate to Represent the Class and Satisfy the Requirements of Rule 23(g).

Pursuant to Federal Rule of Civil Procedure 23(g)(1)(A), the court must assess four factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Here, all four factors weigh in favor of appointing Dardarian Ho Kan & Lee ("DHKL"), Schneider Wallace Cottrell Kim LLP ("SWCK"), Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf"), and Disability Rights Advocates ("DRA") as class counsel.

First, the work performed by Class Counsel has resulted in a complete understanding of the class claims resolved by the Consent Decree.  Class Counsel received and analyzed extensive information from the City, including over 120,000 pages of public records regarding the City's historic paving projects and sidewalk and curb ramp work; policies, procedures, and design documents regarding the City's work on pedestrian right of way facilities; and City budgetary documents.  Wallace Decl. ¶ 9; Dardarian Decl. ¶ 5. The City also provided Plaintiffs with the inspection data from its most recent surveys of the condition of its curb ramps and sidewalks, which provided Plaintiffs with an understanding of the prevalence and nature of

the access barriers to persons with mobility disabilities in the City's pedestrian right of way.  Wallace Decl. ¶ 9; Dardarian Decl. ¶ 5.  These findings were further confirmed by the site inspections performed by Plaintiffs and their retained access experts.  Dardarian Decl. ¶ 5.  With that information in hand, the parties were able to negotiate a settlement that will bring the City into compliance with applicable disability access laws on a realistic schedule.  In short, proposed Class Counsel have fully vetted the claims subject to the Consent Decree.

Second, Class Counsel have extensive experience in handling class actions and complex litigation generally, and systemic disability access cases specifically – with each having been appointed as Class Counsel in numerous cases protecting and advancing the rights of persons with disabilities to full and equal access to both public and private spaces.  *See* Dardarian Decl. ¶¶ 37-57; Wallace Decl. ¶¶ 4-7; Cabalo Decl. ¶¶ 2-9; Parks Decl. ¶¶ 3-25.

Third, proposed Class Counsel are highly knowledgeable regarding disability access laws.  They each have years of experience litigating under federal and state disability access laws, and in particular prosecuting claims against government entities pursuant to Title II of the ADA and Section 504.  *See* Dardarian Decl. ¶¶ 37-57; Wallace Decl. ¶¶ 4-7; Cabalo Decl. ¶¶ 2-9; Parks Decl. ¶¶ 3-25.

Fourth, proposed Class Counsel have committed significant resources to this matter.  Dardarian Decl. ¶¶ 73-79; Wallace Decl. ¶¶ 35-53; Cabalo Decl. ¶¶ 12-30; Parks Decl. ¶¶ 30-34.  Over the past eight years, they have pursued this action vigorously on behalf of the Settlement Class without any compensation.  Dardarian Decl. ¶ 75; Wallace Decl. ¶ 46; Cabalo Decl. ¶¶ 14, 22; Parks Decl. ¶¶ 26, 30-43.  The dedication of those resources has produced a Consent Decree that will greatly enhance access to the City's pedestrian right of way for persons with mobility disabilities.  Dardarian Decl. ¶¶ 9-17, 75; Wallace Decl. ¶¶ 12-26; Cabalo Decl. ¶ 36; Parks Decl. ¶ 44.  Proposed Class Counsel are also committed to implementing the settlement of this action through the duration of the Decree.  *See* Dardarian Decl. ¶ 58; Wallace Decl. ¶¶ 25-26; Cabalo Decl. ¶ 10; Parks Decl. ¶ 45.

Finally, proposed Class Counsel have no conflicts of interest with the Settlement Class that affect their ability to fairly and adequately represent the Class.  Dardarian Decl. ¶ 58; Wallace Decl. ¶ 8; Cabalo Decl. ¶ 11; Parks Decl. ¶ 45.

933353.11

1          **4.      The Requirements of Rule 23(b)(2) Are Satisfied.**

2          Certification is appropriate under Rule 23(b)(2) where the defendant "has acted or refused to act on

3  grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

4  appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he primary role of this provision

5  has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir.

6  2014); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Under Rule 23(b)(2), "it is

7  sufficient if class members complain of a pattern or practice that is generally applicable to the class."

8  *Walters v. Reno*, 145 F. 3d 1032, 1047 (9th Cir. 1988).  The requirements are "almost automatically satisfied

9  in actions primarily seeking injunctive relief." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

10         The claims here are precisely the type that Rule 23(b)(2) was intended to cover.  Here, Plaintiffs

11  seek broad declaratory and injunctive relief—system-wide improvements in the City's pedestrian rights of

12  way—on behalf of a large class of all City residents and visitors with mobility disabilities who are being

13  denied access due to alleged deficiencies in Defendant's policies and practices.  Additionally, the Settlement

14  Class seeks only injunctive relief to address the alleged barriers, and does not seek any damages.

15         Similar cases alleging that state or local governments violated the ADA and/or Section 504 by

16  failing to provide access to the pedestrian right of way for persons with mobility disabilities have been

17  certified for class treatment under Rule 23(b)(2). *See Willits*, 2011 WL 7767305; *Caltrans*, 249 F.R.D. 334;

18  *see also* Dardarian Decl., Ex. 7 (ECF No. 15 Order Granting Class Certification, *Ochoa, et al. v. City of*

19  *Long Beach*, No. 2:14-cv-04307-DSF-FFM (C.D. Cal. Sept. 15, 2015), ECF No. 90)).

20         In sum, the Settlement Class satisfies Rule 23 and should be certified.  Plaintiffs should also be

21  appointed Settlement Class Representative, and Plaintiffs' counsel should be appointed Settlement Class

22  Counsel pursuant to Rule 23(g).

23  **B.      The Consent Decree Is Fair, Reasonable, and Adequate, and Should Be Approved.**

24         Under Federal Rule of Civil Procedure 23(e), a court must determine whether a proposed class

25  action settlement is "fair, reasonable, and adequate" and whether to give class members notice of the

26  proposed settlement and an opportunity to voice approval or disapproval of it.  *See* Fed. R. Civ. P.

27  23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026);

28  Manual § 21.632.  Rule 23(e)(2) requires courts to examine whether (1) the class representatives and class

933353.11

counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the

relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to

each other.  In addition, the Ninth Circuit uses the following factors for preliminary approval, several of

which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.[2]

*Hanlon*, 150 F.3d at 1026; *see also Bluetooth*, 654 F.3d at 946.  As discussed below, the proposed

Consent Decree satisfies each of the Rule 23(e)(2) and Ninth Circuit factors, such that notice of the

proposed settlement should be provided the Settlement Class in advance of the Final Approval Hearing.

### 1.    Class Counsel Have Adequately Represented the Settlement Class, and Their Experience and Views Support Approval.

The first factor assesses whether "the class representatives and class counsel have adequately

represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  As discussed in Sections IV.A.2.d-IV.A.3, Plaintiffs

and proposed Class Counsel are adequate representatives because they have no conflicts of interest with the

Settlement Class and have vigorously advanced the interests of the Settlement Class and secured a

settlement that the parties believe will result in a fully compliant pedestrian right of way by the end of its

term.  *Hanlon*, 150 F.3d at 1020; *Bluetooth*, 654 F.3d at 946.  Accordingly, this factor weighs in favor of

preliminary approval.

Moreover, "'[g]reat weight' is accorded to the recommendation of counsel, who are most closely

acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).  "[P]arties represented by competent counsel are

better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

litigation."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,  967 (9th Cir. 2009) (citation omitted).  Class

Counsel have extensive experience litigating systemic disability access cases and brought this experience

---

[2] Plaintiffs will address the final factor, the class's reaction to the proposed settlement, in their Motion for Final Approval.

16

Pls.' Mot. for Prelim. Approval of Class Action Settlement; Mem. of P. and A. in Support
Case No. 23-cv-02354-RS

933353.11

to bear negotiating the Consent Decree that they believe is fair, adequate, and reasonable.  *See* Dardarian Decl. ¶¶ 9, 37-57; Wallace Decl. ¶¶ 4-7, 25-26; Cabalo Decl. ¶¶ 2-9, 26; Parks Decl. ¶¶ 3-25, 44.  To Class Counsel's knowledge, this is the first settlement that will achieve a fully compliant pedestrian right of way for people with mobility disabilities, and it will do so in a similar or shorter time period than is set forth in other settlements, despite the City's financial difficulties.  *See generally* Dardarian Decl. ¶¶ 9, 46-48, 61-67.  Accordingly, the Court can confidently follow counsel's recommendation to approve the settlement.

### 2.     <u>The Consent Decree Was Negotiated at Arm's Length.</u>

The second factor assesses whether the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  Here, the negotiations were adversarial and at arm's length at all times.  The Consent Decree was negotiated over the course of two years through seven (7) formal mediations guided by experienced mediator Magistrate Judge Edward A. Infante and many additional exchanges between the Parties, demonstrating that the negotiations were fully informed and not rushed in any way.  *See Hanlon*, 150 F.3d at 1027 ("There is no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims.").

Moreover, the Consent Decree withstands the heightened level of scrutiny applicable to pre-certification class actions, which are examined for "evidence of collusion or other conflicts of interest." *Bluetooth*, 654 F.3d at 946-47.  The Ninth Circuit has identified three "subtle signs" that may indicate collusion: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded . . .; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*. at 947.  The mere presence of *Bluetooth* indicia does not foreclose settlement approval. Where "the fee award is clearly reasonable as viewed through the appropriate application of either the lodestar or percentage-of-recovery methods, the chance of collusion narrows to a slim possibility." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir. 2014) (vacated after appeal dismissed).  Moreover, "it is sufficient that a district court recognizes and balances potentially collusive provisions . . . against the other terms of the settlement agreement."  *Id.*  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.

17

Pls.' Mot. for Prelim. Approval of Class Action Settlement; Mem. of P. and A. in Support
Case No. 23-cv-02354-RS

Here, the Consent Decree provides the class with injunctive relief only. The Decree neither creates a settlement fund, nor releases class damages claims. The class wide injunctive relief is substantial and valued in excess of $157.4 million. Dardarian Decl. ¶ 16. Accordingly, Class Counsel will not receive an amount disproportionate to the value of the Settlement Class's relief and the amount of attorneys' fees awarded will not impact the relief provided to the Settlement Class. The first and third *Bluetooth* indicia are not applicable to the present matter.

The second *Bluetooth* indicia—a "clear sailing" provision—is present in the Consent Decree. Although the City has agreed to pay up to $2,008,000 to resolve Plaintiffs' claim for reasonable attorneys' fees and costs, there is nothing collusive about this arrangement. First, the parties did not negotiate attorneys' fees and costs until after all other relief issues had been resolved. Dardarian Dec. ¶¶ 8, 74; Wallace Decl. ¶ 11. Thus, there was no opportunity for Class Counsel to "pursu[e] their self-interest to the detriment of the class's interest." *Laguna*, 753 F.3d at 925. Second, the amount of agreed-upon attorneys' fees and costs are amply justified under the lodestar method, supported by detailed, contemporaneous billing records documenting the work performed by Class Counsel on behalf of the Class, and is less than the amount of attorneys' fees and costs they actually incurred. Dardarian Decl. ¶¶ 74-80 & Ex. 15; Wallace Decl. Ex. C; Cabalo Decl. Ex. C; Parks Decl. Ex. 1. Finally, the Consent Decree represents an outstanding result for the Settlement Class, including extensive injunctive relief valued between $157.4 million and $325.7 million. *See* Dardarian Decl. ¶¶ 11-17. When the clear sailing provision is viewed within the context of the Consent Decree as a whole, it is obvious that this provision is not collusive. Put differently, the substantial benefits of the Consent Decree demonstrate that the interests of Class Counsel did not "infect the negotiations." *Bluetooth*, 654 F.3d at 947.

### 3.     The Consent Decree Represents an Outstanding Result for the Settlement Class.

The third factor assesses whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). "In determining whether the Settlement Agreement 'falls within the range of possible approval,' the Court must focus on 'substantive fairness and adequacy'

1    and 'consider [P]laintiffs' expected recovery balanced against the value of the settlement offer.'" *Uschold*

2    *v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (quoting *In re Tableware Antitrust*

3    *Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

4        The Consent Decree provides significant benefits to Settlement Class Members.  It requires the

5    City to remediate on a steady and realistic timeline the 12,738 curb ramps and 2,075,000 square feet of

6    sidewalks the City identified as inaccessible or damaged, fix additional sidewalk and curb ramp barriers as

7    part of other City programs, ensures that all newly constructed and altered pedestrian facilities comply with

8    federal and state disability access standards, and allows people with mobility disabilities to request that the

9    City fix specific barriers even where not previously identified.  *See supra* § II.B.  As a result, the City will be

10   remediating more than just the inaccessible newly constructed and altered pedestrian facilities that were the

11   focus of Plaintiffs' Complaint but will also address non-compliant curb ramps and sidewalks that were

12   installed prior to the effective dates of the ADA and Section 504.  Class Counsel are confident that the work

13   required by the Consent Decree is sufficient to provide for a pedestrian right of way that will be readily

14   accessible to persons with mobility disabilities.  Dardarian Decl. ¶ 9.  This is an excellent result for the

15   Settlement Class, and it is unlikely that a court would order greater relief.  *See id.*  The Consent Decree

16   provides Plaintiffs and the Settlement Class full relief for the class' claims.  *Id.*

17       The adequacy of the relief obtained through settlement is further supported by the potential costs,

18   risks, and delay of trial and appeal.  *See, e.g.*, *Castaneda v. Burger King*, No. 3:08-cv-04262, 2010 WL

19   2735091, at *3 (N.D. Cal. July 12, 2010); Dardarian Decl. Ex. 12 (Final Approval Order, *Caltrans*, No.

20   4:06-cv-05125, ECF No. 515 at 5-6 (N.D. Cal. June 2, 2010) ("The settlement affords significant and

21   immediate relief that may never have materialized had the trial concluded.")).  Litigation and trial of this

22   matter would require the expenditure of significant resources by the Parties and the Court, including time

23   and costs spent on fact and expert discovery, further analysis of data, and depositions of Class Members,

24   City employees, and experts.  Dardarian Decl. ¶ 68.  For example, in *Ochoa v. City of Long Beach*, Case

25   No.: 2:14-cv-04307-DSF (FFMx) (C.D. Cal.), a settlement was reached only after two-and-a-half years of

26   contested litigation, including extensive discovery and motion practice.  *Id.* ¶ 69 & Ex. 8.  The parties

27   propounded and responded to hundreds of discovery requests, exchanged over 30,000 pages of documents,

28   and conducted twenty-four depositions.  *Id.*  Similarly, in *Willits v. City of Los Angeles*, Case No. 2:10-cv-

933353.11

05782 (C.D. Cal.), the parties engaged in several years of extremely contentious litigation that involved proceedings in state and federal court at the trial and appellate court levels. *Id*. & Ex. 9. Before reaching a settlement, the parties propounded and responded to hundreds of discovery requests, exchanged over 4 million pages of documents, and conducted thirty-four depositions. *Id*. Finally, the settlement in *Caltrans*, No. 4:06-cv-05125, was reached after trial had started, itself after three years of intense litigation in which the parties engaged in extensive motion practice and fact and expert discovery in parallel federal and state court actions. *See id*. & Ex. 12 at 2-5.[3] Litigation of this matter would be similarly protracted and costly.

The method of providing relief to the Settlement Class is also fair, reasonable, and adequate. As discussed above, construction and remediation will be prioritized so that the most severe barriers will be removed first, and construction and remediation will be spread around the City equitably.

Finally, the Parties' agreement regarding attorneys' fees supports adequacy. The City has agreed not to oppose Plaintiffs' request of $2,008,000 in reasonable attorneys' fees, expenses, and costs through the Effective Date. Consent Decree § 26. Plaintiffs will file a motion during the class notice period demonstrating the reasonableness of the requested attorneys' fees pursuant to the "lodestar" method, which is the appropriate method in civil rights cases. *Muniz v. UPS*, 738 F.3d 214, 222 (9th Cir. 2013); *see also* Settlement Guidance ¶ 9. As of July 18, 2025, Class Counsel had expended approximately 2,581 hours (after billing judgment) in pursuing this case, incurring approximately $2,145,323.50 in fees and $255,506.04 in costs and expenses,[4] and they anticipate spending significantly more time and incurring additional costs through the Fairness Hearing. *See* Dardarian Decl. ¶¶ 73-79; *see generally* Settlement Guidance ¶ 6. Accordingly, their request for $2,008,000 currently represents a 16% discount on Plaintiffs' attorneys' fees, and is reasonable given the significant injunctive relief – worth between $157.4 and $325.7 million – secured on behalf of the Class. *See* Dardarian Decl. ¶¶ 16, 78-79; Settlement Guidance ¶ 6.

---

[3] DHKL served as class counsel in both the *Ochoa* and *Willits* matters; SWCK was lead class counsel in *Willits*; and DRA was class counsel in *Ochoa*. DRA was also class counsel in *Caltrans*.

[4] This figure includes $87.706.30 in expert costs. *See* Dardarian Decl. ¶ 77; Settlement Guidance ¶ 6.

20

1   Thus, the adequacy of the relief supports preliminary approval.[5]

2   ### 4.     The Consent Decree Treats Class Members Equitably Relative to Each Other.

3   The Consent Decree does not provide preferential treatment to any subset of the Settlement Class.

4   All Settlement Class Members will share equally in the City-wide removal of pedestrian right of way

5   barriers. Once a particular barrier is removed, Settlement Class Members will benefit equally from the

6   improved access at that location. Moreover, the Decree expressly mandates that Annual Commitment work

7   be performed pursuant to equitable principles. Consent Decree § 10.1. In addition, all Settlement Class

8   Members will have an equal opportunity to avail themselves of the Access Request System.

9   Nor do the proposed individual payments to Plaintiffs for their personal injuries and service to the

10  Class make the Consent Decree inequitable. First, in the Ninth Circuit, service awards are routinely

11  awarded and do not render class action settlements unfair. *Staton*, 327 F.3d at 976. Moreover, the named

12  Plaintiffs are releasing all of their monetary claims related to their personal encounters with pedestrian right

13  of way barriers, whereas Settlement Class Members are not releasing damages claims and may still pursue

14  such claims against the City. Even large disparities in the amount of damage awards between the named an

15  unnamed class members are reasonable if justified by the record. *Id.* at 978; *In re MyFord Touch Consumer*

16  *Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *12 (N.D. Cal. March 28, 2019). Here, Plaintiffs are

17  releasing their claims for damages relating to many instances of physical pain and discomfort they have

18  faced as a result of the City's inaccessible pedestrian right of way. *See* Consent Decree § 23-25; Curran

19  Decl. ¶ 3-10; Brown-Booker Decl. ¶ 3-18.

20  In sum, all relevant factors set forth in Rule 23(e)(2) support approval of the Consent Decree, and

21  Plaintiffs have shown that they are likely to obtain final approval of the proposed settlement.

22  ### 5.     The Consent Decree Compares Favorably to Similar Settlements.

23  Consistent with the requirements set forth in the Settlement Guidance, Exhibit 10 to the Dardarian

24  Declaration is a table summarizing comparable class settlements, which underscores the excellent results

25  provided for Settlement Class Members herein. *See* Settlement Guidance ¶ 11.

26

27

28  [5] The final factor set forth in Rule 23(e)(2)(C) is not applicable here as all agreements made by the Parties are set forth in the Consent Decree.

The Consent Decree here provides more complete relief to people with mobility disabilities than is set forth in two recent settlements negotiated by Class Counsel. First, in *Goodlaxson et al. v. Mayor and City Council of Baltimore*, the District of Maryland recently granted final approval of a partial consent decree, which requires the City of Baltimore to spend between $8-12 million dollars per fiscal year for four years to install accessible curb ramps at existing corners of Baltimore's pedestrian right of way, to remediate non-compliant curb ramps and pedestrian walkways, and also sets forth the parties' plan for future negotiations after the initial four-year term expires. *See* Dardarian Decl. ¶ 62 & Ex. 5 (Mem. Op. Re: Order Granting Final Approval, *Goodlaxson et al. v. Mayor and City Council of Baltimore*, No. 1:21-cv-01454, ECF No. 154 at 3 (D. Md. Mar. 21, 2025)). Because of the limited term of the partial consent decree, class members did not release any claims; instead, those claims were stayed pending the outcome of the parties' future negotiations. The Court approved attorneys' fees and costs totaling $1,168,830.75 and $10,000 in payments to each of the four named plaintiffs. *See id.* at 8, 17.

Second, the Eastern District of Pennsylvania granted final approval of a class action settlement that resolved claims that the City of Philadelphia had discriminated on the basis of disability in the installation, alteration, and maintenance of curb ramps and sidewalks in violation of the ADA and Section 504. *See* Dardarian Decl. ¶ 63 & Ex. 11 (Mem. Op. Re: Order Granting Final Approval, *Liberty Res., Inc. v. City of Philadelphia*, No. 2:19-cv-03846, ECF No. 163 at 1 (E.D. Pa. May 1, 2023)), also available at 2023 WL 3204018. Under the settlement, the city agreed to install and remediate 10,000 curb ramps over a fifteen-year period, completing 2,000 every three years; to implement a system for residents to request the city to cure inaccessible ramps; to set aside funding for class counsel to monitor compliance; and to prioritize curb ramp accessibility so that class members could more easily access jobs, schools, and other aspects of community life. *See* Dardarian Decl. Ex. 11 at 20. The court also approved attorneys' fees and costs of $1.1 million. *See id.* at 29-33.

The Consent Decree here also compares favorably to three other settlements negotiated by Class Counsel. First, in *Ochoa v. City of Long Beach*, the District Court for the Central District of California granted final approval of a class action settlement with a thirty-year term that requires the City of Long Beach to install 4,500 curb ramps within the first five years, spend up to $50 million remediating curb ramps, and up to $125 million remediating and maintaining other pedestrian facilities. *See* Dardarian

933353.11

Decl. ¶ 46 & Ex. 8 (Final Approval Order, *Ochoa v. City of Long Beach*, No. 2:14-cv-04307, ECF No. 175 (C.D. Cal. Oct. 17, 2017). The court approved plaintiffs' reasonable attorneys' fees, expenses, and costs of $3,364,904. *See* Dardarian Decl. Ex. 8 at 5.

Second, in *Willits v. City of Los Angeles*, the Central District of California granted final approval of a settlement that requires the City of Los Angeles to fund significant access improvements to the City's pedestrian right of way over a thirty-year period and guarantees spending of more than $1.4 billion in improvements to existing pedestrian facilities, as well as unlimited amounts on newly constructed and altered facilities. *See* Dardarian Decl. ¶¶ 47-48 & Ex. 9 (Order Granting Final Approval, *Willits v. City of Los Angeles*, No. 2:10-cv-05782, ECF No. 415 (C.D. Cal. Aug. 26, 2016)). Following ten years of intensive litigation, the court approved an award of Plaintiffs' attorneys' fees of $13.3 million and costs of $1.7 million. *See* Dardarian Decl. ¶ 48. The named plaintiffs also received individual payments of $49,950 pursuant to settlements reached in a separate state court matter. *See id*.

Finally, in *Caltrans*, the Northern District of California granted a settlement resolving claims that Caltrans discriminated against persons with mobility and/or vision impairments by denying them access to sidewalks, crosswalks, underpasses, and other public rights of way. *See* Dardarian Decl. ¶ 65 & Ex. 12 (*Californians for Disability Right., Inc. v. Cal. Dep't of Transp.*, No. 4:06-cv-05125, ECF No. 515 at 2 (N.D. Cal. Dec. 2, 2009). The settlement required Caltrans to commit $1.1 billion over thirty years to eliminate barriers and improve access for class members; to implement a monitoring procedure, including by hiring an access consultant; to engage in annual reporting; and to provide a grievance procedure for public complaints relating to access issues and Caltrans responses thereto. *See id.* at 3. Based on the parties' settling during trial after three years of active litigation, the court adopted the magistrate judge's report and recommendation to award $8.75 million in attorneys' fees and costs. *See* Dardarian Decl. Exs. 13 (Order Accepting Report and Recommendation, Feb. 2, 2011, ECF 529) and 14 (Report and Recommendation Re: Pls.' Mot. for Attorney's Fees, ECF No. 528).

In each of these cases, as here, potential class members were provided notice of the settlement through publication on the defendants' and class-counsel's websites in multiple languages, through publication in local newspapers, and through dissemination to local disability rights organizations. *See generally* Dardarian Decl. ¶ 66 & Exs. 8-14. Additionally, as here, class members in the other cases

1    (except *Goodlaxson*) released claims for injunctive and declaratory relief arising from the pedestrian

2    right of way barriers, while the named plaintiffs also released claims for monetary relief.  *See generally*

3    *id.*  While the settlements in the *Willits* and *Caltrans* cases involve significantly greater monetary

4    commitments, they also involve vastly larger defendants with pedestrian rights of way that dwarf that of

5    the City of Oakland.  *See* Dardarian Decl. ¶ 66.  Moreover, the settlement here is the only one that is

6    expected to achieve complete sidewalk and curb ramp compliance with applicable disability access

7    standards throughout the City by the end of its term.  *See id.*  Upon reviewing these comparable

8    settlements, the Court can confidently approve the instant settlement.

9    **C.**   **The Proposed Notice Satisfies Due Process and Should Be Approved.**

10             Under Rule 23(e)(1), the "court must direct notice in a reasonable manner to all class members who

11   would be bound by the proposal" if justified by the parties' showing.  Due process requires that interested

12   parties be provided with notice reasonably calculated under the circumstances to apprise them of the

13   pendency of the action and afford them an opportunity to present their objections.  *See Mullane v. Cent.*

14   *Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Notice is satisfactory "if it 'generally describes the

15   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

16   forward and be heard.'"  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting

17   *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Additionally, notice must be

18   reasonably calculated to reach interested parties.  *Mullane*, 339 U.S. at 318.

19             The notice standard is satisfied here.  The content of the proposed Notice, attached as Exhibit B to

20   the Consent Decree, "clearly and concisely state[s] in plain, easily understood language: (i) the nature of

21   the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class

22   member may enter an appearance through an attorney if the member so desires; (v) that the court will

23   exclude from the class any member who requests exclusion; (vi) the time and manner for requesting

24   exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ.

25   P. 23(c)(2)(B).

26             The notice distribution plan proposed in the Consent Decree is the "best notice … practicable under

27   the circumstances," (Fed. R. Civ. P. 23(c)(2)(B)), is "reasonable," (Fed. R. Civ. P. 23(e)(1)), and is

28   consistent with the Northern District of California's Procedural Guidance for Class Action Settlements.

24

Within ten (10) days after the issuance of the Preliminary Approval Order, Class Counsel will cause notice of the settlement to be provided to the list of organizations that serve individuals with mobility disabilities, attached as Exhibit D to the Consent Decree.  Consent Decree § 22.5.4.  Within twenty (20) days of Preliminary Approval, Class Counsel and the City will post the Notice on their websites in multiple languages and accessible formats.  *Id.* § 22.5.3, 22.5.5.  And, within thirty (30) days of Preliminary Approval, the City will cause the Notice to be published once each week for four (4) consecutive weeks in local print and online newspapers.  Consent Decree § 22.5.1.

The Parties developed this proposed plan for Notice distribution taking into account the breadth and magnitude of the Settlement Class and to ensure that the Notice reaches the maximum number of members of the Settlement Class in the most efficient and cost-effective manner.  The proposed Notice and the proposed distribution plan are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane*, 339 U.S. at 314; *accord* Fed. R. Civ. P. 23(h)(1).  The Court should approve the proposed Notice and direct that it be distributed.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court: (1) preliminarily approve the Consent Decree; (2) certify the proposed Settlement Class and appoint Plaintiffs and their counsel as representatives; and (3) approve and direct the dissemination of the proposed class notice.

Dated: July 30, 2025                    Respectfully submitted,

DARDARIAN HO KAN & LEE


*/s/ Katharine F. Trabucco*
Katharine F. Trabucco

*Attorneys for Plaintiffs and the proposed Settlement Class*

933353.11