Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Mark T. Johnson (SBN 076904)
mjohnson@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Catherine Cabalo (SBN 248198)
ccabalo@peifferwolf.com
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel: (415) 766-3592
Fax: (415) 840-9435

Linda M. Dardarian (SBN 131001)
ldardarian@dhkl.law
Andrew P. Lee (SBN 245903)
alee@dhkl.law
Katharine F. Trabucco (SBN 305413)
ktrabucco@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612-3536
Tel: (510) 763-9800
Fax: (510) 835-1417

Shawna Parks (SBN 208301)
sparks@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704
Tel: (510) 665-8644
Fax: (510) 665-8511

Attorneys for the Plaintiffs and the Proposed Class

**UNITED DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHAEL CURRAN, NICOLE BROWN-BOOKER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>vs.<br><br>CITY OF OAKLAND,<br><br>        Defendant. | Case No.: 23-cv-02354-RS<br><br>**CLASS ACTION**<br><br>**NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     December 4, 2025<br>Time:     1:30 p.m.<br>Dept:     Courtroom 3<br>Before:   Hon. Richard Seeborg |

# **<u>TABLE OF CONTENTS</u>**

**Page**

NOTICE OF MOTION AND MOTION.................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.........................................................1

I.   INTRODUCTION .....................................................................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................2

    A.   Negotiation of the Consent Decree and Filing of Complaint ........................2

    B.   Summary of the Proposed Settlement ............................................................4

    C.   Preliminary Approval .....................................................................................5

    D.   Notice to the Class .........................................................................................6

III. ARGUMENT .............................................................................................................7

    A.   The Settlement Agreement Is Fair and Reasonable and Should be Finally
        Approved. .......................................................................................................7

        1.   The Class Representative and Class Counsel Have Adequately
            Represented the Class. .........................................................................9

        2.   The Settlement Was Negotiated at Arm's Length. ..............................9

        3.   The Consent Decree Represents an Outstanding Result for the Settlement
            Class. ..................................................................................................11

        4.   The Settlement Treats Class Members Equitably Relative to Each Other. .......13

        5.   Class Counsel's Experience and Views Support Approval. ..............14

        6.   The Presence of a Governmental Participant ...................................15

        7.   Class Notice .......................................................................................15

        8.   The Reaction of Settlement Class Members to the Proposed Consent
            Decree ................................................................................................16

    B.   The Proposed Service Award Should Be Approved. ....................................16

    C.   Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs Should be
        Approved. .....................................................................................................16

IV.  CONCLUSION ........................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Animation Workers Antitrust Litig.*,
  No. 5:14-cv-04062-LHK, 2016 WL 6841655 (N.D. Cal. Nov. 11, 2016) ............................ 15

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal 2018) ..................................................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................... 8, 9, 10, 11

*Californians for Disability Rights v. Cal. Dept. of Transp.*,
  No. 4:06-cv-05125, ECF No. 515 (N.D. Cal. June 2, 2010) .................................................. 12

*Castaneda v. Burger King*,
  No. 3:08-cv-04262, 2010 WL 2735091 (N.D. Cal. July 12, 2010) ........................................ 12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................... 8, 14, 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .....................................................................................*passim*

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2009) ............................................................................................. 12

*In re Hyundai and Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) (en banc) .......................................................................... 7, 9

*Johnson v. Shaffer*,
  No. 2:12-cv-1059-KJM-ACP, 2016 WL 3027744 (E.D. Cal. May 27, 2016) ....................... 15

*Laguna v. Coverall N. Am., Inc.*,
  753 F.3d 918 (9th Cir. 2014) ............................................................................................ 10

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................................................... 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................................................................... 12

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) ....................... 11

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ........................................................................................... 15

*Muniz v. UPS,*
    738 F.3d 214 (9th Cir. 2013) .................................................................................. 13

*In re MyFord Touch Consumer Litig.,*
    No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. March 28, 2019) ........................... 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 14, 16

*Officers for Justice v. Civ. Serv. Comm'n of City and County of S.F.,*
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 7, 8

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 8, 13, 14

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ................................................................................ 15

*Staton v. Boeing, Co.,*
    327 F.3d 938 (9th Cir. 2023) ................................................................................ 14

*Taylor v. W. Marine Prods., Inc.,*
    No. 3:13-cv-04916-WHA, 2014 WL 4683926 (N.D. Cal. Sept. 19, 2014) ........................ 12

*In re Toys "R" Us-Del., Inc.- Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................. 8

*Uschold v. NSMG Shared Servs., LLC,*
    333 F.R.D. 157 (N.D. Cal. 2019) ............................................................................ 11

**Federal Statutes**

Americans with Disabilities Act ............................................................................. 3, 12

The Rehabilitation Act of 1973 ............................................................................. 3, 12

**State Statutes**

Cal. Gov. Code § 11135 ......................................................................................... 3

942131.9

**Rules**

Fed. R. Civ. P.

23 ................................................................................................................ 1, 2, 15
23(a) .................................................................................................................... 5
23(b)(2) ............................................................................................................... 5
23(c)(2)(B) ......................................................................................................... 15
23(e) ........................................................................................................ 7, 11, 15
23(e)(1) .............................................................................................................. 15
23(e)(2) ................................................................................................................ 7
23(e)(2)(A) ....................................................................................................... 8, 9
23(e)(2)(B) ........................................................................................................... 9
23(e)(2)(C) ................................................................................................... 11, 13
23(e)(3) .............................................................................................................. 11

942131.9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 4, 2025 at 1:30 p.m., in the Courtroom of the Honorable Richard Seeborg of the United States District Court for the Northern District of California, located in Courtroom 3 on the 17th Floor of 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Michael Curran and Nicole Brown-Booker and Defendant City of Oakland will and hereby do jointly move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order granting final approval of the Parties' proposed class action Consent Decree. The Parties' motion is based on this Notice, the accompanying memorandum of points and authorities, the Consent Decree, including all exhibits thereto, the accompanying declarations of Linda M. Dardarian and Gouri Chakraborty, the declaration of Kevin McLaughlin, the argument of counsel, all papers and records on file in this case, and such other matters as the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs Michael Curran and Nicole Brown-Booker ("Plaintiffs") and Defendant City of Oakland ("the City") request final approval of a proposed class action Consent Decree that requires the City to make sweeping improvements to its pedestrian right of way over the next twenty-five years that will ensure that the City's sidewalks and street crossings are fully and equally accessible to people with mobility disabilities. Under the terms of the proposed Consent Decree, the City has committed to remediate all street crossings in the pedestrian right of way that are missing or have inaccessible curb ramps, make accessible all sidewalks and crosswalks that the City knows to be damaged, and to complete all of this work by the end of 2050. This includes work expected to cost between $157.4 and $325.7 million to redress at least 12,738 curb ramps and 78,531 stretches of sidewalk (covering 2,075,000 square feet) that the City identified in 2021-2022 surveys as being inaccessible (curb ramps) or damaged (sidewalks), as well as other relief. To ensure that Settlement Class members receive this relief, the proposed Consent Decree mandates effective reporting and monitoring under the Court's continuing jurisdiction.

The Court preliminarily approved the proposed settlement on September 5, 2025 (ECF No. 45). Since then, the Parties have caused Notice of Settlement to issue in conformance with this Court's Order Granting Preliminary Approval.  *See* Dardarian Decl. in Supp. of Joint Mot. for Final Approval of Class Action Settlement and Statement of Compliance with Notice Requirements ("Dardarian Final Decl.") ¶¶ 1-4, submitted herewith; Chakraborty Decl. in Supp. of Joint Mot. for Final Approval of Class Action Settlement and Statement of Compliance with Notice Requirements ("Chakraborty Decl.") ¶¶ 4-7, submitted herewith; McLaughlin Decl. Regarding City of Oakland's Compliance with Notice Requirements ("McLaughlin Decl.") ¶¶ 3-9, to be filed with the Court.  To date, no Class Member has submitted an objection.

The proposed Settlement is fair, adequate, and reasonable, and satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure.  Implementation of the Consent Decree will result in widespread improvement to the accessibility of the City's pedestrian infrastructure for Oakland's residents and visitors with mobility disabilities, resulting in a fully accessible pedestrian right of way.  Its benefits far outweigh the risks of litigation to both the Plaintiffs and the City.  Accordingly, the Parties request that the Court: (i) grant final approval of the Settlement; and (ii) retain jurisdiction over the Consent Decree and the Parties throughout the Consent Decree's Term.[1]

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     Negotiation of the Consent Decree and Filing of Complaint

In 2017, Plaintiffs and their Counsel began actively investigating whether the City of Oakland violated federal and state disability access laws by failing to make its pedestrian facilities that were newly constructed or altered since the effective date of those laws fully and equally accessible to people with mobility disabilities, and by failing to maintain the accessibility of its newly constructed or altered pedestrian facilities.  *See*, Dardarian Decl. in Supp. of Pls.' Mot. for Prelim. Approval of Class Action

---

[1] By separate motions filed on October 10, 2025, Plaintiffs also ask the Court to (i) award Class Counsel reasonable attorneys' fees and costs in the amount of $2,008,000 (ECF No. 46); and (ii) approve individual payments of $35,000 each to Plaintiffs Curran and Brown-Booker for their services on behalf of the Settlement Class and their broader release of monetary claims against the City, including for personal injuries (ECF No. 47).

Settlement ("Dardarian Prelim. Decl.") ¶ 3, ECF No. 40-1.  On June 7, 2019, Class Counsel sent the City a letter asserting that Plaintiffs and other City residents and visitors with mobility disabilities have been denied access to the City's pedestrian right of way because of a lack of accessible sidewalks, curb ramps, and crosswalks throughout the City.  *See id.* ¶ 4 & Ex. 2.  Plaintiffs' letter outlined the manner in which the City's inaccessible pedestrian right of way violated the City's obligations under the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and parallel California disability nondiscrimination laws at Government Code sections 11135 *et seq.* ("Section 11135"), which each require that public entities provide full and equal access to their newly constructed and altered pedestrian facilities for persons with mobility disabilities and to maintain the accessibility of those facilities.  *See id*.  Plaintiffs invited the City to work cooperatively toward a binding class action settlement agreement resolving Plaintiffs' injunctive relief claims without formal litigation.  *See id.* ¶ 5 & Ex. 1, Consent Decree at 1.  The City agreed, and the Parties engaged in informal discovery as part of their effort to resolve these claims.  *See id.*  Pursuant to Plaintiffs' requests, the City provided, and Plaintiffs reviewed 120,000 pages of documents, including access surveys, transition plan documents, memoranda and reports from City officials, paving databases, design documents and other pertinent information regarding the accessibility of the City's pedestrian right of way.  *See id.*; *see also* ECF No. 40-2, Wallace Decl. in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Wallace Decl.") ¶ 9, ECF No. 40-2.  Plaintiffs also hired certified access consultants (CASps) to inspect portions of the City's pedestrian right of way.  *See* Dardarian Prelim. Decl. ¶ 5.  However, the Parties did not settle at that time.  *See id.*

Accordingly, on May 15, 2023, Plaintiffs filed a class action complaint alleging violations of the ADA, Section 504, and Section 11135 based on the City's failure to construct, alter, and maintain sidewalks, curb ramps and crosswalks throughout the City's pedestrian right of way that are accessible to people with mobility disabilities.  ECF No. 1; *see also* Dardarian Prelim. Decl. Ex. 1, Consent Decree at 1.  The Parties continued to engage in settlement negotiations and exchanged additional information, including data from the City's comprehensive survey of curb ramp accessibility and sidewalk damage throughout its pedestrian right of way that the City conducted in 2021-22, as well as budgeting and other financial documents, and information gathered from Plaintiffs' further inspections

1   of curb ramp and sidewalk accessibility. *See* Dardarian Prelim. Decl. ¶ 7 & Ex. 1, Consent Decree at

2   1. Between August 2023 and June 2025, the Parties attended seven (7) mediation sessions with retired

3   Magistrate Judge Edward A. Infante, ultimately reaching an agreement on injunctive relief on April 16,

4   2025, after which they began separately negotiating payments to the Named Plaintiffs and Plaintiffs'

5   reasonable attorneys' fees and costs. *See id.* ¶ 8; *see also* Wallace Decl. ¶¶ 9-11. On July 21, 2025, the

6   Parties executed the final Class Action Consent Decree. *See* Dardarian Prelim. Decl. ¶ 8 & Ex. 1.

7   **B.    Summary of the Proposed Settlement**

8   Under the Consent Decree, Exhibit 1 to the Dardarian Prelim. Declaration, the City will

9   remediate all missing and non-compliant curb ramps by 2050, including by installing or upgrading curb

10  ramps at all 12,738 sidewalk corners identified as inaccessible in the City's 2021-2022 Curb Ramp

11  Survey at the rate of 500 curb ramps per year from July 2025 through July 2027, 750 curb ramps per year

12  from July 2027 through July 2029, and 925 curb ramps per year from July 2029 through June 2040 ("Curb

13  Ramp Annual Commitment"). Consent Decree § 6.1.[2] Also by 2050, the City will remediate damage to

14  existing sidewalks – identified at 78,531 locations and affecting approximately 2,075,000 square feet of

15  sidewalks in the City's 2021-2022 Sidewalk Survey – by repairing a minimum of 85,000 square feet of

16  damaged sidewalks per fiscal year ("Sidewalk Annual Commitment"). Consent Decree § 7.1.1.[3]

17  Throughout the term of the Consent Decree, whenever a crosswalk within City limits is altered, the

18  City will ensure that the crosswalk is accessible, even if the alteration does not span the full width,

19  length, or intersection of the relevant street, road, or highway. *Id.* §§ 7.3.1-2. Whenever the City or its

20  agent newly constructs or alters a pedestrian right of way, the City will ensure it is accessible and also

21  has accessible curb ramps if it crosses a curb or is adjacent to a corner where pedestrians are permitted

---

[2] Within fifteen years, by 2040, the City has committed to making fully accessible the 10,833 to 11,468 curb ramps (85-90%) that can be made accessible using a standard curb ramp design plan. Consent Decree. § 6.1.1. For the 1,270 to 1,905 curb ramps (10-15%) that can only be made accessible using a non-standard, engineered curb ramp design, the City will install or remediate curb ramps at those locations by the end of 2050. *See id.*

[3] The City will also remediate barriers as part of its ongoing sidewalk remediation projects, and implement or maintain additional programs to ensure the removal of sidewalk barriers throughout Decree's term. Consent Decree § 7.2.

942131.9

1    to cross the street. *Id.* § 8.2.[4]  The City will maintain accessible curb ramps, sidewalks and crosswalks,

2    will create a database of information about the accessibility of curb ramps and sidewalks, including

3    slopes, widths and any access barriers in the curb ramps or sidewalks, and the condition of crosswalks

4    next to curb ramps, and will provide Class Counsel with regular reports about its compliance with the

5    Consent Decree, and Class Counsel will inspect the City's work. *Id.* §§ 13-14, 16-19.

6         When improving its existing sidewalks and curb ramps, the City will take equity considerations

7    into account to ensure that work benefits underserved populations and will prioritize fixing the most

8    dangerous and least accessible curb ramps and sidewalks as well as those serving (1) government

9    offices and facilities; (2) transportation corridors; (3) places of public accommodation such as

10   commercial and business zones and places of employment; and (4) other areas.  Consent Decree §§

11   10.1, 10.2.1-2.  The Consent Decree also requires the City to maintain an Access Request System for

12   persons with mobility disabilities to submit requests to have curb ramp, sidewalk and crosswalk access

13   barriers removed or fixed, which the City will review with thirty (30) days and address within six

14   months (180 days), or at most one year if the removal or fix costs more than $100,000, or is already

15   scheduled as part of another project. *Id.* §§ 12.1-12.6.

16        Based on the City's estimates of the average costs per standard curb ramp, engineered curb

17   ramp, and square foot of sidewalk, the work to make Oakland's pedestrian right of way accessible over

18   the 25-year term of the Decree will cost approximately $157.4 million to $325.7 million, not including

19   additional construction or pedestrian right of way barriers identified beyond those in the City's 2021-

20   2022 surveys.  *See* Dardarian Prelim. Decl. ¶¶ 13, 15-16.

21   **C.    Preliminary Approval**

22        On September 5, 2025, the Court granted preliminary approval of the proposed Settlement.

23   ECF No. 45 ("Prelim. Approval Order").  In its Order, the Court certified the following Settlement

24   Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2):

25            All persons (including residents of and/or visitors to the City of Oakland) with any
            Mobility Disability, who, at any time prior to court judgment granting final
26            approval to this Consent Decree or during the Term of the Consent Decree have
            been denied full and equal access to the City's pedestrian right of way due to the

27

28   ───────────────
     [4] The City will also only approve permitted third-party projects that include work on pedestrian rights
     of way if the work meets disability access standards.  Consent Decree § 8.5.

> lack of a Curb Ramp or a Curb Ramp or Pedestrian Walkway that was damaged, in need of repair, not Accessible, or otherwise in a condition not suitable or sufficient for use.

Prelim. Approval Order ¶ 1. The Court appointed Plaintiffs Curran and Brown-Booker as the Class Representative and Plaintiffs' Counsel as Class Counsel. *Id.* ¶ 1. The Court also directed notice to the Settlement Class and set a date for the fairness hearing. *See id.* at ¶ 12.

**D.    Notice to the Class**

After preliminary approval, the Parties effectuated notice pursuant to the Consent Decree and the Court's Preliminary Approval Order. *See* Prelim. Approval Order ¶ 12; *see also* Dardarian Final Decl. ¶¶ 1-4; Chakraborty Decl. ¶¶ 4-7; McLaughlin Decl. ¶¶ 3-9.

The Court-Approved Notice explained the case, the terms of the Consent Decree, including the injunctive relief, release of claims, how to object to the settlement, and the amounts requested for Class Counsel's attorneys' fees and costs and the individual payments to the Class Representatives. *See* Dardarian Prelim. Decl. Ex. 1 (Consent Decree, Ex. B); *see generally* Prelim. Approval Order ¶ 5.

On September 10, 2025, Class Counsel provided a copy of the Notice of Settlement to thirty-four organizations that serve individuals with Mobility Disabilities. Dardarian Final Decl. ¶ 2; Chakraborty Decl. ¶ 5 & Ex. A; *see generally* Prelim. Approval Order ¶ 12a. The organizations were identified on a list that was filed as Exhibit D to the Consent Decree. *See* Dardarian Prelim. Decl. Ex. 1. To date, sixteen (18) organizations have confirmed receipt of the Notice. Chakraborty Decl. ¶ 7 & Ex. A. Class Counsel's email to one organization was returned undeliverable and no alternative email address was found, so Class Counsel mailed Notice to that organization. *See id.* ¶ 6 & Ex. C. None of the emails to the remaining fifteen (15) organizations who have not yet confirmed receipt were returned as undeliverable, which indicates that the Notice was received. *Id.* ¶ 7.

On September 24, 2025, Class Counsel posted on their websites a copy of the Notice of Settlement in English, Spanish, and Chinese, and in an accessible electronic format that can be recognized and read by software commonly used by individuals with visual impairments to read web wages. Dardarian Final Decl. ¶ 3; *see generally* Prelim. Approval Order ¶ 12b. On September 16, 2025, the City posted the English, Spanish, and Chinese-language versions of the Notice of Settlement in English on the City's official website, where they remain posted among the City's media releases.

942131.9

McLaughlin Decl. ¶ 4; *see generally* Prelim. Approval Order ¶ 12b.  The Spanish and Chinese notices were updated to correct certain minor errors and those updated notices were posted on September 26, 2025.  McLaughlin Decl. ¶ 4.

Once each week for four consecutive weeks, the City published the Notice of Settlement in Oaklandside (beginning September 28, 2025), The East Bay Times (beginning October 3, 2025), The San Francisco Chronicle (beginning October 7, 2025), and SF Gate (beginning October 7, 2025). McLaughlin Decl. ¶¶ 5-8; *see generally* Prelim. Approval Order ¶ 12c.

The Court's preliminary approval order set the deadline for objecting to the Settlement at forty-five (45) days from the initial publication of the Settlement Notice in the selected publications.  *See* Prelim. Approval Order ¶ 7.  Given that the last date for the initial publication of the Settlement Notice was October 7, 2025, *see* McLaughlin Decl. ¶¶ 8-9, the objection deadline is November 21, 2025.[5]  To date, no Class Members have objected to the Settlement.  *See* Dardarian Final Decl. ¶ 6.  Plaintiffs will update the Court regarding the final number of objections prior to the Final Approval Hearing.  *See id.*

## III.    ARGUMENT

**A.    The Settlement Agreement Is Fair and Reasonable and Should be Finally Approved.**

The law favors the settlement of class actions.  *See, e.g., In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).  "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants, and their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted).

To grant final approval of a class action settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon,* 150 F.3d at 1026; *see also, Officers for Justice v. Civ. Serv. Comm'n of City and County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that the "universally applied standard" is whether the

---

[5] The Settlement Notices had listed the objection deadline as November 18, 2025, based upon the publication deadline set in the Preliminary Approval Order, but The San Francisco Chronicle and SF Gate began publishing notice October 7, 2025, forty-five (45) days after which is November 21, 2025. *See* McLaughlin Decl. ¶¶ 8-9.  As such, the Parties believe that the Court should accept objections submitted as of November 21, 2025.  The Parties will respond to any objections submitted between November 19 and November 21 by November 25, 2025.  *See id.* ¶ 9; Dardarian Final Decl. ¶ 5.

settlement is "fundamentally fair, adequate, and reasonable"). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. Specifically, Rule 23(e)(2) requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Moreover, under well-settled Ninth Circuit precedent, in order to assess a class action settlement, courts must balance several similar factors, including the following "*Hanlon* factors":

> [t]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). These same factors are also sometimes referred to as the eight "*Churchill* factors." *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The Court must demonstrate comprehensive consideration of all factors; however, in conducting this analysis, the Ninth Circuit has noted that "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625). Accordingly, when determining whether to grant final approval, the Court's role in reviewing "what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also In re Toys "R" Us-Del., Inc.- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014).

For several reasons, the proposed Settlement clearly meets the requirements for final approval.

### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

Rule 23(e)(2)(A) asks whether the plaintiff and their counsel have adequately represented the Settlement Class. As this Court previously found when it certified the Settlement Class and preliminarily approved the Settlement, the Class Representative and Class Counsel have adequately represented the Class. *See* Prelim. Approval Order ¶ 1; *see generally* Fed. R. Civ. P. 23(e)(2)(A). As demonstrated by the supporting declarations,[6] Class Representatives Curran and Brown-Booker and Class Counsel are adequate representatives because they have no conflicts of interest with the Settlement Class and have vigorously advanced the interests of the Settlement Class through eight years of settlement negotiations that resulted in a Consent Decree that requires a fully accessible pedestrian right of way in Oakland by the end of its term. These factors supports final approval. *See Hanlon*, 150 F.3d at 1020-21; *Bluetooth*, 654 F.3d at 946.

### 2. The Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) assesses whether the proposed settlement was reached at arm's length, rather than in the absence of information necessary to illuminate the value of the claims. *See Hanlon*, 150 F.3d at 1027; *In re Hyundai and Kia*, 926 F.3d at 570 ("'[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.'") (quoting *Rodriguez,* 563 F.3d at 965).

Here, the negotiations were adversarial and at arm's length at all times. The Consent Decree was negotiated over the course of two years through seven (7) formal mediations guided by experienced mediator Magistrate Judge Edward A. Infante and many additional exchanges between the Parties, demonstrating that the negotiations were fully informed and not rushed in any way. *See Hanlon*, 150 F.3d at 1027 ("There is no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims.").

Moreover, the Consent Decree withstands the heightened level of scrutiny applicable to pre-certification class actions, which are examined for "evidence of collusion or other conflicts of interest."

---

[6] *See* Curran Decl. ¶¶ 11-24, ECF No. 40-5; Brown-Booker Decl. ¶¶ 19-33, ECF No. 40-6; Dardarian Prelim. Decl. ¶¶ 5, 9-17, 37-58, 73-79; Wallace Decl. ¶¶ 4-9, 12-26, 35-53; Cabalo Decl. ¶¶ 2-30, 36, ECF No. 40-5; Parks Decl. ¶¶ 3-26, 30-45, ECF No. 40-4.

1    *Bluetooth*, 654 F.3d at 946-47.  The Ninth Circuit has identified three "subtle signs" that may indicate

2    collusion: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class

3    receives no monetary distribution but class counsel are amply rewarded . . .; (2) when the parties negotiate

4    a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class

5    funds . . . ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be

6    added to the class fund." *Id.* at 947 (citations omitted).  The mere presence of *Bluetooth* indicia does not

7    foreclose settlement approval.  Where "the fee award is clearly reasonable as viewed through the

8    appropriate application of either the lodestar or percentage-of-recovery methods, the chance of collusion

9    narrows to a slim possibility." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir. 2014) (vacated

10   after appeal dismissed).  Moreover, "it is sufficient that a district court recognizes and balances potentially

11   collusive provisions . . . against the other terms of the settlement agreement." *Id.*  "It is the settlement taken

12   as a whole, rather than the individual component parts, that must be examined for overall fairness."

13   *Hanlon*, 150 F.3d at 1026.

14          Here, the Consent Decree provides the class with injunctive relief only.  The Decree neither creates

15   a settlement fund, nor releases class damages claims.  The class wide injunctive relief is substantial and

16   valued in excess of $157.4 million.  Dardarian Prelim. Decl. ¶ 16.  Accordingly, Class Counsel will not

17   receive an amount disproportionate to the value of the Settlement Class's relief and the amount of

18   attorneys' fees awarded will not impact the relief provided to the Settlement Class.  The first and third

19   *Bluetooth* indicia are not applicable to the present matter.

20          The second *Bluetooth* indicia—a "clear sailing" provision—is present in the Consent Decree.

21   Although the City has agreed to pay up to $2,008,000 to resolve Plaintiffs' claim for reasonable attorneys'

22   fees and costs, there is nothing collusive about this arrangement.  First, the parties did not negotiate

23   attorneys' fees and costs until after all other relief issues had been resolved.  Dardarian Prelim. Decl. ¶¶ 8,

24   74; Wallace Decl. ¶ 11.  Thus, there was no opportunity for Class Counsel to "pursu[e] their self-interest to

25   the detriment of the class's interest." *Laguna*, 753 F.3d at 925.  Second, the amount of agreed-upon

26   attorneys' fees and costs are amply justified under the lodestar method, supported by detailed,

27   contemporaneous billing records documenting the work performed by Class Counsel on behalf of the

28   Class, and is less than the amount of attorneys' fees and costs they actually incurred.  Dardarian Prelim.

942131.9

Decl. ¶¶ 74-80 & Ex. 15; Wallace Decl. Ex. C; Cabalo Decl. Ex. C; Parks Decl. Ex. 1.  Finally, the Consent Decree represents an outstanding result for the Settlement Class, including extensive injunctive relief valued between $157.4 million and $325.7 million.  *See* Dardarian Prelim. Decl. ¶¶ 11-17.  When the clear sailing provision is viewed within the context of the Consent Decree as a whole, it is obvious that this provision is not collusive.  Put differently, the substantial benefits of the Consent Decree demonstrate that the interests of Class Counsel did not "infect the negotiations." *Bluetooth*, 654 F.3d at 947.

The arm's-length negotiations and absence of collusion supports final approval of the proposed Settlement.

### 3.    **The Consent Decree Represents an Outstanding Result for the Settlement Class.**

The third Rule 23(e) factor assesses whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  "In determining whether the Settlement Agreement 'falls within the range of possible approval,' the Court must focus on 'substantive fairness and adequacy' and 'consider [P]laintiffs' expected recovery balanced against the value of the settlement offer.'" *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

Here, the injunctive relief guaranteed by the Settlement provides the full relief sought for the Class's claims – an excellent result, especially in light of the extensive time and resources that litigation would have required to obtain the same results.  *See generally Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (noting settlement favored where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'") (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).  The Consent Decree requires the City to remediate on a steady and realistic timeline the 12,738 curb ramps and 2,075,000 square feet of sidewalks the City identified as inaccessible or damaged, fix additional sidewalk and curb ramp barriers as part of other City programs, ensure that all newly constructed and altered pedestrian facilities comply with federal and state

942131.9

disability access standards, and fulfill within reasonable time period all requests made by or on behalf of people with mobility disabilities that the City fix specific barriers even where not previously identified. *See supra* § II.B. As a result, the City will be remediating more than just the inaccessible newly constructed and altered pedestrian facilities that were the focus of Plaintiffs' Complaint but will also address non-compliant curb ramps and sidewalks that were installed prior to the effective dates of the ADA and Section 504. Class Counsel are confident that the work required by the Consent Decree is sufficient to provide for a pedestrian right of way that will be readily accessible to persons with mobility disabilities. Dardarian Prelim. Decl. ¶ 9. This is an excellent result for the Settlement Class, and it is greater relief than a court would likely order as a result of contested litigation. *See id.*

In exchange for the comprehensive injunctive relief under the Consent Decree, Class Members are releasing only their claims for non-monetary relief that could have been brought in this lawsuit related to the accessibility of the City's curb ramps and pedestrian walkways; Class Members are not releasing or staying any claims for monetary damages that they may have. *See* Dardarian Prelim. Decl. Ex. 1. The release thereby adheres to Ninth Circuit precedent cabining a class release to only the claims that are certified for class treatment and that are "based on the identical factual predicate" alleged in the operative complaint. *See, e.g., Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2009) (citation omitted); *Taylor v. W. Marine Prods., Inc.*, No. 3:13-cv-04916-WHA, 2014 WL 4683926, at *13 (N.D. Cal. Sept. 19, 2014) ("Counsel must remember that any class settlement must be limited to the issues certified for class treatment and may not release claims of absent class members not certified.").

The adequacy of the relief obtained through settlement is further supported by the potential costs, risks, and delay of trial and appeal. *See, e.g., Castaneda v. Burger King*, No. 3:08-cv-04262, 2010 WL 2735091, at *3 (N.D. Cal. July 12, 2010); Dardarian Prelim. Decl. Ex. 12 (Final Approval Order at 5-6, *Californians for Disability Rights v. Cal. Dept. of Transp.*, No. 4:06-cv-05125, ECF No. 515 at 5-6 (N.D. Cal. June 2, 2010) ("The settlement affords significant and immediate relief that may never have materialized had the trial concluded.")). Litigation and trial of this matter would require the expenditure of significant resources by the Parties and the Court, including time and costs spent on formal fact and expert discovery, further analysis of data, and depositions of Class Members, City employees, and experts. Dardarian Prelim. Decl. ¶ 68-69 & Exs. 8-12 (describing three similar pedestrian-right-of-way settlements

942131.9

against California municipalities and Caltrans that were reached only after extensive and costly discovery and motion practice). On the contrary, the Parties here engaged in significant informal discovery that equipped Class Counsel with information that was more than sufficient to come to a fair settlement – without the costs, delays, and contentiousness of formal litigation. *See generally Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *Rodriguez*, 563 F.3d at 967 (affirming the district court's granting final approval where the court "could find that counsel had a good grasp on the merits of their case before settlement talks began"); *Hanlon*, 150 F.3d at 1027 (affirming the district court's approval of class settlement where "[t]here [was] no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims").

The method of providing relief to the Settlement Class is also fair, reasonable, and adequate. As discussed above, construction and remediation will be prioritized so that the most severe barriers will be removed first, and construction and remediation will be spread around the City equitably.

Finally, the Parties' agreement regarding attorneys' fees supports adequacy. The City has agreed not to oppose Plaintiffs' request of $2,008,000 in reasonable attorneys' fees, expenses, and costs through the Effective Date. Consent Decree § 26. Plaintiffs filed a motion demonstrating the reasonableness of the requested attorneys' fees pursuant to the "lodestar" method, which is the appropriate method for determining attorneys' fees in civil rights cases. *Muniz v. UPS*, 738 F.3d 214, 222 (9th Cir. 2013). Moreover, Plaintiffs filed this motion at least thirty-five (35) days prior to the objection deadline so that Settlement Class Members had ample opportunity to review Plaintiffs' request for attorneys' fees, expenses, and costs. To date, no one has objected to Plaintiffs' motion. Dardarian Final Decl. ¶ 6.

In sum, the Consent Decree is a tremendous result that is in the Settlement Class's best interests. It is unlikely that they would have achieved a better recovery through litigation, especially in light of the risks, time, and expense that would be required. Thus, the adequacy of relief supports final approval.[7]

### 4.    The Settlement Treats Class Members Equitably Relative to Each Other.

All Settlement Class Members will share equally in the City-wide removal of pedestrian right of way barriers. Once a particular barrier is removed, Settlement Class Members will benefit equally from the

---

[7] The final factor set forth in Rule 23(e)(2)(C) is not applicable here as all agreements made by the Parties are set forth in the Consent Decree.

942131.9

improved access at that location.  Moreover, the Decree expressly mandates that Annual Commitment work be performed pursuant to equitable principles.  Consent Decree § 10.1.  In addition, all Settlement Class Members will have an equal opportunity to avail themselves of the Access Request System.

Nor do the proposed individual payments to Plaintiffs for their personal injuries and service to the Class make the Consent Decree inequitable.  First, in the Ninth Circuit, service awards are routinely awarded and do not render class action settlements unfair.  *Staton v. Boeing, Co.*, 327 F.3d 938, 976 (9th Cir. 2023).  Moreover, the Named Plaintiffs are releasing all of their monetary claims related to their personal encounters with pedestrian right of way barriers, whereas Settlement Class Members are not releasing damages claims and may still pursue such claims against the City.  Even large disparities in the amount of damage awards between the named an unnamed class members are reasonable if justified by the record.  *Id.* at 978; *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *12 (N.D. Cal. March 28, 2019).  Here, Plaintiffs are releasing their claims for damages relating to many instances of physical pain and discomfort they have faced as a result of the City's inaccessible pedestrian right of way.  *See* Consent Decree § 23-25; Curran Decl. ¶ 3-10; Brown-Booker Decl. ¶ 3-18.  Plaintiffs filed their Motion for Class Representative Payments at least thirty-five days prior to the objection deadline, ECF No. 47, and to date no Class Member has objected to that motion or the proposed payments.  Dardarian Final Decl. ¶ 6.

### 5.    Class Counsel's Experience and Views Support Approval.

Courts must also consider the experience and views of counsel regarding the settlement.  *See Churchill Vill., L.L.C.,* 361 F.3d at 576-77.  "Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).  "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (citation omitted).

Class Counsel have extensive experience litigating systemic disability access cases and brought this experience to bear negotiating the Consent Decree that they believe is fair, adequate, and reasonable.  *See* Dardarian Prelim. Decl. ¶¶ 9, 37-57; Wallace Decl. ¶¶ 4-7, 25-26; Cabalo Decl. ¶¶ 2-9, 26; Parks Decl. ¶¶ 3-25, 44.  To Class Counsel's knowledge, this is the first settlement that will achieve a fully compliant

14

1  pedestrian right of way for people with mobility disabilities,[8] and it will do so in a similar or shorter time

2  period than is set forth in other settlements, despite the City's financial difficulties.  *See generally*

3  Dardarian Prelim. Decl. ¶¶ 9, 46-48, 61-67.  Accordingly, the Court can confidently approve the settlement.

### 6.     The Presence of a Governmental Participant

5  In determining the fairness of a settlement, the Court should consider whether the proposed

6  settlement includes a governmental participant.  Although the City of Oakland is a government entity

7  and Defendant herein, the Ninth Circuit in *Hanlon* was referring to settlements in which the

8  government was involved as a prosecutor.  *See Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-ACP, 2016

9  WL 3027744, at *5 (E.D. Cal. May 27, 2016) (citing *Hanlon*, 150 F.3d at 1026; *Marshall v. Holiday*

10  *Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (citing SEC approval of settlement as weighing in

11  favor of approval, where SEC was prosecuting a parallel action).  Accordingly, this factor weighs

12  neither for nor against final approval of the Consent Decree.  *See, e.g.*, *In re Animation Workers*

13  *Antitrust Litig.*, No. 5:14-cv-04062-LHK, 2016 WL 6841655, at *2 (N.D. Cal. Nov. 11, 2016) (where

14  there is no governmental participant, that factor is "irrelevant").

### 7.     Class Notice

16  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon.*,

17  150 F.3d at 1025.  Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a

18  reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

19  23(e)(1).  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

20  including individual notice to all members who can be identified through reasonable effort."  The

21  notice must "clearly and concisely state in plain, easily understood language" the nature of the action,

22  the class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ. P.

23  23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class members, it

24  does not require that each class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449,

25  1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually

---

[8] To Class Counsel's knowledge, there is no case in which the court ordered a municipality to fully remediate pedestrian right of way accessibility barriers at the conclusion of contested litigation either. Dardarian Final Decl. ¶ 7.

1  received" notice).

2      As described above, the Parties effectuated Notice in accordance with the Consent Decree and

3  the Court's Preliminary Approval Order.  Accordingly, the Court can find that Class Members were

4  provided the best notice practicable under the circumstances.

5      **8.    The Reaction of Settlement Class Members to the Proposed Consent Decree**

6      In determining the fairness of a settlement, the Court should consider class member objections.

7  The absence of a large number of objections to a proposed settlement raises a strong presumption that

8  the terms of the agreement are fair.  *See, e.g., Churchill Vill., L.L.C.,* 361 F.3d at 577 (approving a

9  settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected

10 to the settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal 2018); *Nat'l*

11 *Rural Telecomms. Coop.*, 221 F.R.D. at 529.  The deadline for Settlement Class Members to submit

12 objections to the Consent Decree is November 21, 2025, and to date, no Class Members have objected

13 to the Settlement.  Plaintiffs will update the Court with the final information regarding the number of

14 objections in advance of the Final Approval Hearing, but the reaction of Settlement Class Members so

15 far supports final approval of the proposed Settlement.

16 **B.    The Proposed Service Award Should Be Approved.**

17     As discussed in Plaintiffs' Motion for Class Representative Payments, ECF No. 47, Plaintiffs

18 request that this Court approve individual payments of $35,000 each to Plaintiffs Curran and Brown-

19 Booker in recognition of the services they have rendered to the Settlement Class as well as in exchange

20 for Plaintiffs releasing all claims for monetary relief, including personal injury claims, in addition to

21 their releasing the injunctive, declaratory, and non-monetary claims.  Consent Decree §§ 23-25.  These

22 payments will not come out of the Annual Commitments but will instead by paid separately by the City.

23 Dardarian Prelim. Decl. ¶ 33.  Plaintiffs filed their Motion at least 35 days prior to the deadline to object to

24 the Settlement, and as of the date of this filing, no one has objected to the proposed individual

25 payments.  Dardarian Final Decl. ¶ 6.  Accordingly, for the reasons stated in their papers, Plaintiffs

26 respectfully request that the Court grant the requested individual payments.

27 **C.    Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs Should be Approved.**

28     As set forth in Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs, ECF No. 46,

942131.9

Plaintiffs seek $2,008,000 for Class Counsel's reasonable attorneys' fees and costs under the lodestar method, which is considerably less than Class Counsel's actual lodestar.  Plaintiffs filed their Motion at least 35 days prior to the deadline to object to the Settlement, and as of the date of this filing, no one has objected to the proposed award of attorneys' fees, costs, and litigation expenses.  Dardarian Final Decl. ¶ 6.  Accordingly, for the reasons stated in their papers, Plaintiffs respectfully request that the Court grant the requested amount in full.

## IV.    CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court grant final approval of the Consent Decree, including Plaintiffs' requested attorneys' fees and costs and Class Representative payments, and enter final judgment in accordance with the [Proposed] Order submitted herewith.

Dated: October 27, 2025              Respectfully submitted,

                                     DARDARIAN HO KAN & LEE

                                     /s/ Katharine F. Trabucco
                                     Katharine F. Trabucco
                                     Attorneys for the Plaintiffs and the Proposed Class

Dated: October 27, 2025              CITY OF OAKLAND

                                     /s/ Kevin P. McLaughlin
                                     Kevin P. McLaughlin
                                     Attorneys for Defendant City of Oakland

## SIGNATURE ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory on this e-filed document.

Dated:                               /s/ Katharine F. Trabucco
                                     Katharine F. Trabucco