Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Mark T. Johnson (SBN 076904)
mjohnson@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Catherine Cabalo (SBN 248198)
ccabalo@peifferwolf.com
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
4 Embarcadero Center, 14th Floor
San Francisco, CA 94104
Telephone: (415) 766-3592
Facsimile: (415) 840-9435

Linda M. Dardarian (SBN 131001)
ldardarian@dhkl.law
Andrew P. Lee (SBN 245903)
alee@dhkl.law
Katharine F. Trabucco (SBN 305413)
ktrabucco@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612-3536
Telephone: (510) 763-9800
Facsimile: (510) 835-1417

Shawna Parks (SBN 208301)
sparks@dralegal.org
DISABILITY RIGHTS
ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704
Telephone: (510) 665-8644
Facsimile: (510) 665-8511

Attorneys for the Plaintiffs and the Settlement Class

UNITED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL CURRAN, NICOLE BROWN-BOOKER, on behalf of themselves and all others similarly situated,

       Plaintiffs,

vs.

CITY OF OAKLAND,

       Defendant.

**CLASS ACTION**

Case No.: 23-cv-02354-RS

**[PROPOSED] FINAL ORDER AS MODIFIED (1) APPROVING CLASS ACTION SETTLEMENT, (2) GRANTING MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS, AND (3) GRANTING MOTION FOR CLASS REPRESENTATIVE PAYMENTS**

Date:     December 4, 2025
Time:     1:30 p.m.
Dept:     Courtroom 3
Before:  Hon. Richard Seeborg

Trial Date:   None set

WHEREAS, on December 4, 2025, at 1:30 p.m., the Court held a hearing (the "Fairness Hearing") to determine, whether the settlement in this action by Defendant City of Oakland ("the City") and Plaintiffs Michael Curran and Nicole Brown-Booker ("Plaintiffs"), as set forth in the Consent Decree, a copy of which is attached hereto as Exhibit 1 (the "Consent Decree"), is fair, reasonable and adequate, such that an Order of final approval should be issued and a final judgment upon said Consent Decree should be entered by the Court;

WHEREAS, the Plaintiffs' motion for reasonable attorneys' fees and costs (ECF No. 46) and motion for class representative payments (ECF No. 47) were also heard at the Fairness Hearing, and

WHEREAS, the Fairness Hearing was attended by the Parties, through their respective counsel of record in this action, and by such other individuals and entities as set forth in the record in this matter, NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

## I.    BACKGROUND

Plaintiffs Curran and Brown-Booker are persons with mobility disabilities who allege that the City violated federal and state disability access laws – the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794a(b), and California Government Code section 11135 *et seq.* ("Section 11135") – by failing to make its pedestrian facilities that were newly constructed or altered since the effective date of those laws fully and equally accessible to people with mobility disabilities, and by failing to maintain the accessibility of its newly constructed or altered pedestrian facilities.

Plaintiffs and their Counsel began investigating their claims in 2017 and engaging in informal discovery and settlement negotiations with the City in 2019, before filing this action on May 15, 2023. Following the filing of the Complaint, the Parties continued to exchange information and engage in settlement negotiations, attending seven (7) mediation sessions with retired Magistrate Judge Edward A. Infante between August 2023 and June 2025.  The Parties reached agreement on injunctive relief on April 16, 2025, after which they began separately negotiating Plaintiffs' reasonable attorneys' fees and

1  costs. The Parties reached final agreement in the form of the Consent Decree on July 21, 2025, which

2  the Court preliminarily approved on September 5, 2025.  ECF No. 45.

3       As summarized below, the Consent Decree provides substantial relief to the Settlement Class,

4  including, but not limited to, binding Annual Commitments to remediate a minimum number of curb

5  ramps and sidewalk segments each year until the City achieves a pedestrian right of way that fully

6  complies with federal and state disability access standards by ~~2025~~2050, measures to ensure

7  maintenance of remediated curb ramps and sidewalks, enhancements to the City's remediation and

8  maintenance request system, and annual reporting and monitoring requirements.  Based on the City's

9  estimates of the average remediation costs, the work to make Oakland's pedestrian right of way

10 accessible over the 25-year term of the Decree will cost approximately $157.4 million to $325.7

11 million, not including additional construction or pedestrian right of way barriers identified beyond

12 those that were revealed in the survey of sidewalk damage and curb ramp accessibility that City

13 contractors conducted in 2021-2022.

14            **II.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

15      1.    The Court, for the purposes of this Order, adopts the terms and definitions set forth in

16 the Consent Decree.

17      2.    The Court has jurisdiction over the subject matter of this action, the Plaintiffs, the

18 Settlement Class, the Consent Decree, and the City.

19      3.    The Court finds that the Notice of Proposed Settlement of Class Action Lawsuit

20 ("Settlement Notice") notified the Settlement Class of the pendency of this action and of the proposed

21 settlement and was disseminated by each of the means required under the Consent Decree and the

22 Order Granting Preliminary Approval of Class Action Settlement (ECF No. 45) dated September 5,

23 2025, and was otherwise fully implemented.

24      4.    The Court finds that the Settlement Notice, as ordered and implemented, was

25 reasonably calculated under the circumstances to apprise the Settlement Class Members of the

26 pendency of this action, all material elements of the proposed Settlement, and their opportunity (a) to

27 submit written objections to the Settlement, and (b) to appear at the Fairness Hearing to object to or

28

942527.6

comment on the Settlement.  The Settlement Notice was reasonable and the best notice practicable to all Settlement Class Members and complied with the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules.  A full and fair opportunity has been afforded to the members of the Settlement Class to participate during the Fairness Hearing, and all other persons wishing to be heard have been heard. Accordingly, the Court determines that all members of the Settlement Class, as set forth below, are bound by this Judgment.

5.      On September 5, 2025, this Court appointed Plaintiffs Curran and Brown-Booker as class representatives of the Settlement Class and appointed the following counsel as Class Counsel to represent the Settlement Class: (a) Dardarian Ho Kan & Lee ("DHKL"); (b) Disability Rights Advocates; (c) Peiffer Wolf Carr Kane Conway & Wise, LLP; and (d) Schneider Wallace Cottrell Kim LLP ("SWCK").

6.      On September 5, 2025, this Court granted Plaintiffs' unopposed Motion for Preliminary Approval and Certification of Settlement Class.  In particular, the Court found, for settlement purposes, that: (a) joinder of all Settlement Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers and dispersion; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) Plaintiffs and the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply to the Settlement Class, so that final declaratory and injunctive relief is appropriate to the Settlement Class.  Accordingly, the Court provisionally certified the following Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), based on the findings in the Order of the same date:

> All persons (including residents of and/or visitors to the City of Oakland) with any Mobility Disability, who, at any time prior to court judgment granting final approval to this Consent Decree or during the Term of the Consent Decree have been denied full and equal access to the City's pedestrian right of way due to the lack of a Curb Ramp or a Curb Ramp or Pedestrian Walkway that was damaged, in need of repair, not Accessible, or otherwise in a condition not suitable or sufficient for use.

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and (g)(1), the Court also appointed Plaintiffs Curran and Brown-Booker and their counsel as representatives of the Settlement Class.

7.      For the reasons stated above, the Court finds that the Settlement Class continues to meet the requirements for class certification under the Federal Rules of Civil Procedure and all other applicable laws and rules.  Class certification is therefore an appropriate method for protecting the interests of the Settlement Class and resolving the common issues of fact and law arising out of Plaintiffs' claims while also eliminating the risk of duplicative litigation.  Accordingly, the Court hereby makes final its earlier provisional certification of the Settlement Class and further confirms the appointment of the Class Representatives and Class Counsel to represent the Settlement Class, as set forth above.

8.      The Court grants final approval of the Settlement set forth in the Consent Decree and finds, after considering all of the factors set forth in Federal Rule of Civil Procedure 23(e)(2), that it is fair, reasonable, adequate, and in the best interests of the Settlement Class as a whole.  The Settlement, which was negotiated at arm's length, offers Settlement Class members comprehensive injunctive relief regarding all of the claims in Plaintiffs' Complaint, and treats Settlement Class members equitably relative to each other.  The Court grants final approval of the release of the City from the Released Claims as set forth in the Consent Decree.

9.      The Court finds that the Consent Decree requires the City to provide extensive injunctive relief for the purpose of making the City's pedestrian right of way accessible to persons with mobility disabilities.  To summarize, the Consent Decree requires the City to install accessible curb ramps or remediate curb ramps that are non-compliant with federal and state disability access standards at 12,738 curb ramp locations by the end of the fiscal year 2050 and remediate sidewalks at approximately 78,531 locations (affecting approximately 2,075,000 square feet of sidewalks) that the City identified in 2021-22 as being damaged.  In order to ensure steady progress, the Decree requires the City to comply with Annual Curb Ramp and Sidewalk Commitments that specify the minimum number of accessible curb ramps and square feet of accessible sidewalks that the City must install or remediate each fiscal year.  In the event the City is unable to meet its Annual Commitment in any

fiscal year, the Decree requires the City to make up the shortfall within the two subsequent fiscal years or have preempted the shortfall in previous years.  The City makes other commitments in the Consent Decree that are proper and reasonably calculated based on the available information to ensure and maintain accessibility of the City's pedestrian right of way to persons with mobility disabilities.  Those other commitments include ensuring that new construction and alterations in the pedestrian right of way that affect curb ramps and sidewalks are compliant with applicable federal and state disability access standards; maintaining all accessible pedestrian facilities so that they are readily accessible to and useable by persons with mobility disabilities, except for isolated or temporary interruptions in access due to maintenance or repairs; prioritizing removal of High Priority Curb Ramp and Sidewalk Barriers; and maintaining an Access Request System through which the City will receive, investigate and respond to requests for the installation and maintenance of accessible curb ramps and remediation of non-compliant curb ramps and pedestrian walkways within reasonable deadlines.  The Decree also requires the City to comply with annual reporting and monitoring requirements.  In exchange, Plaintiffs and the members of the Settlement Class agree to release all injunctive, declaratory, and non-monetary claims related to the City's alleged actions or omissions related to the accessibility of curb ramps and pedestrian walkways in the City's pedestrian right of way during the Consent Decree's term.  Settlement Class Members do not release claims for monetary damages, personal injuries, or property damages.  Plaintiffs Curran and Brown-Booker, in contrast, release all of their monetary claims related to their personal encounters with non-compliant curb ramps and sidewalks in exchange for a damages payment of $35,000 each.

10.     The Court finds that the Consent Decree is fair, adequate and reasonable to all potential Class Members.  The Parties have conducted an extensive evaluation of the merits of the case such that Counsel for both Parties are able to reasonably evaluate their respective positions.  Settlement will also avoid substantial additional costs to all Parties, as well as avoid the delay and risks presented by further prosecution of issues either in the current or separate litigation proceedings which are addressed by the Decree.  The results achieved by the Consent Decree are also in line with approved settlements in similar cases.

942527.6

11.     The Court also finds that the Consent Decree has been reached as the result of good faith, prolonged, serious, and non-collusive arms-length negotiations.  The Parties reached this settlement after six years of informal discovery and information exchange and two years of out-of-court negotiations, including several mediation sessions facilitated by Magistrate Judge Edward Infante (ret.).  The evidence submitted in support of preliminary approval also attested to the extensive informal discovery and information sharing that the Parties engaged in over those six years before reaching the Consent Decree.

12.     The Court further finds that the City's Annual Curb Ramp and Sidewalk Commitments as set forth in the Consent Decree are proper and reasonably calculated, based on available information, to ensure and maintain accessibility of the City's pedestrian right of way to persons with mobility disabilities.  Accordingly, the Settlement shall be consummated in accordance with the terms and conditions of the Consent Decree.

13.     No Class Member has objected to the Settlement.  The absence of any objections further supports the Settlement's final approval.

14.     Plaintiffs Curran and Brown-Booker and all Settlement Class Members (and their respective heirs, assigns, successors, executors, administrators, agents and representatives) are conclusively deemed to have released and forever discharged the City from all Released Claims as set forth in the Consent Decree.  Specifically, Plaintiffs and Settlement Class Members agree to release all injunctive, declaratory and non-monetary relief claims related to the City's alleged actions or omissions relating to the accessibility of the sidewalks and curb ramps in the City's pedestrian right of way to people with mobility disabilities during the Consent Decree's term.  The Settlement Class Members are hereby enjoined and barred from asserting any of the Released Claims against the City until the completion of the Term of the Consent Decree.  Unnamed members of the Settlement Class do not release claims for monetary damages, personal injuries, or property damages.  Class Representatives Curran and Brown-Booker and all Settlement Class Members are bound by this Judgment.

15.     The benefits described in the Consent Decree are the only consideration, fees, costs and expenses that the City shall be obligated to give to any party or entity, including without limitation the Class Representatives, Settlement Class Members, and Class Counsel in connection with the claims released in the Consent Decree and/or the payment of attorneys' fees, costs, and expenses in this action.

16.     The Consent Decree, this Order, and the Judgment are not admissions of liability or fault by the City, or a finding of the validity of any claims in this action or of any wrongdoing or violation of law by the City.

17.     Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order to consummate or enforce the Consent Decree, this Order, or the Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

18.     In accordance with the terms of the Consent Decree, which is attached hereto, the Court reserves exclusive and continuing jurisdiction over Plaintiffs, the Settlement Class Members, the City, and the Consent Decree throughout the term of the Consent Decree, for the sole purpose of supervising the implementation, enforcement, construction, and interpretation of the Consent Decree and this Order and the Judgment.  In that regard, any challenges to the Consent Decree's terms or implementation, whether under state or federal law, shall be subject to the exclusive and continuing jurisdiction of this Court.

### III.    REASONABLE ATTORNEYS' FEES AND COSTS

Also before the Court is Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs in the amount of $2,008,000 in accordance with the Consent Decree.  Having carefully reviewed the papers and the record in this case, considered the arguments, and the relevant legal authority, and good cause appearing, Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs is GRANTED.

### A.    **Background**

Plaintiffs move the Court for an award of $2,008,000 in attorneys' fees, costs, and expenses, the maximum under the Consent Decree.  Plaintiffs have demonstrated that Class Counsel's actual

1    lodestar through September 30, 2025 is $2,253,080.00 based on 2,716.5 hours of work (after a 15%

2    reduction in the exercise of billing judgment) and that their out-of-pocket costs by that date totaled

3    $256,084.01.  Class Counsel have incurred additional fees and costs since then.  As explained below,

4    the Court finds Plaintiffs' request for $2,008,000 in attorneys' fees and costs reasonable.

5    **B.**    **Analysis**

6        Prevailing parties in cases brought pursuant to the ADA and Section 504 are entitled to their

7    attorney fees, expenses, and costs.  *See* 42 U.S.C. § 12205 (ADA prevailing party is entitled to "a

8    reasonable attorney's fee, including litigation expenses, and costs"); 29 U.S.C. § 794a(b) (Section 504

9    prevailing party is entitled to "a reasonable attorney's fee as part of the costs").  Prevailing plaintiffs in

10   cases under Section 11135 who enforce an important right affecting the public interest are also entitled

11   to recover their attorneys' fees.  Cal. Code of Civ. Pro. § 1021.5 ("Section 1021.5").  A party that

12   obtains a judicially enforceable settlement agreement that provides at least some of the relief sought is

13   a "prevailing party" under these fee-shifting statutes.  *La Asociacion de Trabajadores de Lake Forest*

14   *v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010); *Folsom v. Butte Cnty. Ass'n of Gov'ts*, 32

15   Cal.3d 668, 671 (1982).  Plaintiffs are unquestionably the prevailing parties here, where Plaintiffs have

16   obtained a binding Consent Decree that commits the City to ensuring that its pedestrian right of way is

17   fully and equally accessible to persons with mobility disabilities within twenty-five years.

18       **1.**    **Reasonable Attorneys' Fees.**

19       The lodestar method is the "guiding light" for determining fees in civil-rights cases, including

20   disability-rights cases under the ADA.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)

21   (citation omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 432, 434 (1983) ("[T]he most useful

22   starting point for determining the amount of a reasonable fee is the number of hours reasonably

23   expended on the litigation multiplied by a reasonable hourly rate."); *see, e.g.*, *Vogel v. Harbor Plaza*

24   *Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018); *Antoninetti v. Chipotle Mex. Grill, Inc.*, 643 F.3d

25   1165, 1176 (9th Cir. 2010); *accord Ketchum v. Moses*, 24 Cal. 4th 1122, 1135-36 (2001) (holding

26   lodestar-multiplier method should be used to determine reasonable fee award in cases involving a fee-

27

28

1  shifting statute such as Section 1021.5); *Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 48 & n.23

2  (1977).

3          To calculate the lodestar, courts multiply the number of hours reasonably expended by

4  counsel's reasonable hourly rates. *See Hensley*, 461 U.S. at 433-34; *Moreno v. City of Sacramento*,

5  534 F.3d 1106, 1111 (9th Cir. 2008); *Serrano III*, 20 Cal. 3d at 48. There is a strong presumption that

6  the lodestar amount represents a reasonable fee. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738

7  (9th Cir. 2016). Prevailing plaintiffs should generally recover their lodestar "unless special

8  circumstances would render such an award unjust." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th

9  Cir. 2008) (quotation marks omitted) (quoting *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128,

10  1134 (9th Cir. 2002)); *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982).

11          **a.    Hourly Rates**

12          The Court determines the reasonableness of hourly rates by considering the prevailing market

13  rates for attorneys of similar skill and experience conducting similar work in the Bay Area community.

14  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The "relevant legal

15  community" is the forum district for the action in which fees are sought. *Gates v. Deukmejian*, 987

16  F.2d 1392, 1405 (9th Cir. 1992). Attorneys' rates in civil rights class actions are "governed by the

17  same standards which prevail in other types of equally complex Federal litigation …." *Hensley*, 461

18  U.S. at 430 n.4; *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (reasonable

19  rates for civil rights class actions are based on a comparison extending "to all attorneys in the relevant

20  community engaged in 'equally complex Federal litigation,' no matter the subject matter"). "[T]he fee

21  applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these

22  standards." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) (citation omitted).

23          Here, Class Counsel submitted detailed declarations – from Linda M. Dardarian of DHKL, Guy

24  B. Wallace of SWCK, Catherine Cabalo of Peiffer Wolf Carr Kane Conway & Wise, and Shawna

25  Parks of Disability Rights Advocates – setting forth the experience and education of the billing

26  attorneys and legal staff, the work each biller performed on the case, examples of other California state

27  and federal courts approving their hourly rates, and, for DHKL, other entities that pay them their

28

9

942527.6

regular hourly rates pursuant to ongoing settlement obligations.  Plaintiffs also submitted recent

declarations from attorney-fee expert Richard M. Pearl in other matters attesting that DHKL's and

SWCK's 2025 hourly rates are appropriate for the Bay Area legal market, based on his extensive

experience, review of court orders awarding attorneys' fees, other Bay Area law firms' reports

regarding the hourly rates they charge for non-contingent work, and an independent survey of Bay

Area legal market hourly rates.

The Court finds, based on the extensive evidence submitted, that Class Counsel's 2025 hourly

rates[1] are reasonable and within the range of market rates charged by attorneys with similar skill and

experience handling similarly complex litigation in this district.  Accordingly, the Court approves the

hourly rates set forth in the following table.

| Name | Position | Grad. Date/ Years of Experience | Rate |
|---|---|---|---|
| **DARDARIAN HO KAN & LEE** | | | |
| Linda M. Dardarian | Managing Shareholder | 1987, 38 years | $1,275 |
| Andrew P. Lee | Shareholder | 2008, 17 years | $1,125 |
| Katharine F. Trabucco | Partner<br>Associate | 2015, 10 years | $900<br>$850 |
| Mengfei Sun | Associate | 2019, 6 years | $750 |
| Celina Malavé | Associate | 2022, 3 years | $650 |
| Scott Grimes | Senior Lead Paralegal and Statistician | 36 years | $475 |
| Gouri Chakraborty | Paralegal | 2 years | $375 |
| **SCHNEIDER WALLACE COTTRELL KIM LLP** | | | |
| Guy Wallace | Partner | 1993, 32 years | $1,350 |
| Mark Johnson | Senior Attorney | 1977, 48 years | $1,150 |
| Travis Close | Associate | 2014, 11 years | $850 |
| Rachel Steyer | Associate | 2019, 6 years | $750 |
| James Maher, Jr. | Staff Attorney | 2006, 19 years | $500 |
| Emma Sturdevant | Paralegal | | $300 |

---

[1] The Court finds it appropriate for Class Counsel to use their current hourly rates to calculate the lodestar on all time spent since the inception of the case to account for delay in payment.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

| Name | Position | Grad. Date/ Years of Experience | Rate |
|---|---|---|---|
| **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP** | | | |
| Catherine Cabalo | Partner | 2001, 24 years | $1,000 |
| **DISABILITY RIGHTS ADVOCATES** | | | |
| Shawna Parks | Chief Litigation Officer | 1999, 26 years | $1,075 |
| Jinny Kim | Supervising Attorney | 1999, 26 years | $1,005 |
| Rosa Lee Bichell | Staff Attorney | 2019, 6 years | $565 |
| Desiree Robedeaux | Fellowship Attorney | 2023, 2 years | $425 |
| Julia Robaidek | Paralegal | | $280 |
| Stephanie Ossesia | Paralegal | | $280 |

### b.    Hours Billed

Prevailing plaintiffs are entitled to be compensated for "every item of service" that a reasonable lawyer would have performed to protect the client's interest. *Armstrong v. Davis,* 318 F.3d 965, 971 (9th Cir. 2003) (citation omitted); *see also Hensley*, 461 U.S. at 435 (Attorneys who obtain excellent results in the public interest "should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation ...."); *Ketchum*, 24 Cal. 4th at 1133.

Plaintiffs attached detailed billing records to Class Counsel's declarations, which provide the Court sufficient information to confirm that the hours Class Counsel is requesting are reasonable.  *See, e.g.*, *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required.") (citations omitted).  Moreover, the Ninth Circuit has instructed district courts to "defer to the winning lawyer[s'] professional judgment as to how much time [they were] required to spend on the case." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno*, 534 F.3d at 1112); *accord Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88, 104 (2015).  Class Counsel's time spent on this matter was efficient and diligent and led to an excellent result for the Class.  The Court notes that Class Counsel exercised reasonable billing judgment by making a significant reduction in their total lodestar to account for duplicative, inefficient or unproductive time.

11

1    Class Counsel's sworn declarations and time records attest that, after the exercise of billing

2    judgment, Class Counsel worked a total of 2,716.50 hours on this matter through September 30, 2025,

3    and spent additional time on the motion for final approval, preparing for and attending the fairness

4    hearing, and other settlement tasks after that date.  The Court is satisfied that the hours requested by

5    Class Counsel are reasonable.

6    Accordingly, based on substantial evidence, Class Counsel's reasonable lodestar exceeds the

7    $2,008,000 amount that Plaintiffs request for all of their attorneys' fees and costs in this matter,

8    demonstrating that the requested amount is itself reasonable.

9    **2.    Reasonable Costs.**

10    Plaintiffs' requested costs are recoverable.  Through September 3, 2025, Plaintiffs had incurred

11    $256,084.01 in recoverable costs, including filing fees, mediation fees, expert expenses, document

12    storage fees, online legal research costs, and telephone, copy, and printing charges.  The Court finds

13    that the costs incurred here were necessary for the negotiation and litigation of Plaintiffs' claims, are

14    appropriate given the scope and complexity of this matter, are the type that are commonly awarded in

15    civil rights fee shifting cases, and are expressly authorized by the ADA.  *See* 28 U.S.C. § 12205; *Grove*

16    *v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010); *Lovell v. Chandler*, 303 F.3d 1039,

17    1058 (9th Cir. 2002).  Plaintiff's requested costs are therefore reasonable.

18    **IV.    CLASS REPRESENTATIVE PAYMENTS**

19    Finally before the Court is Plaintiffs' Motion for Class Representative Payments in the amount

20    of $35,000 each, in accordance with the Consent Decree.  Having carefully reviewed the papers and

21    the record in this case, considered the arguments, and the relevant legal authority, and good cause

22    appearing, Plaintiffs' Motion for Class Representative Payments is GRANTED.

23    **A.    Background**

24    Plaintiffs Curran and Brown-Booker submitted detailed declarations to the Court outlining their

25    personal experiences with barriers in the City's pedestrian right of way, including the physical injuries,

26    pain, and suffering they allege the barriers to have caused; the time and effort they have expended on

27    behalf of the Settlement Class in the eight years since they initiated the investigation of their claims;

28

12

[PROPOSED] FINAL ORDER (1) APPROVING CLASS ACTION SETTLEMENT, (2) GRANTING MOTION FOR REASONABLE
ATTORNEYS' FEES AND COSTS, AND (3) GRANTING MOTION FOR CLASS REPRESENTATIVE PAYMENTS
CASE NO. 23-CV-02354-RS

and the risks they accepted in publicly attaching their names to a disability-access lawsuit against their home town. Only after reaching agreement on injunctive relief did the Parties begin to negotiate payments to the Named Plaintiffs, ultimately agreeing to individual payments to each Plaintiff in the amount of $35,000 – both for their services to the Class and in exchange for the Plaintiffs' broader release of claims for monetary damages, including for personal injuries. Class Members do not release monetary damages claims under the Consent Decree.

In recognition of the significant benefits their efforts have secured on behalf of the class, as well as in exchange for their broad release of claims for monetary damages, Plaintiffs seek individual payments of $35,000 each, which will be paid separately by the City, having no impact on the funds to be used to remediate pedestrian-right-of-way barriers.

**B.    <u>Analysis</u>**

The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785-87 (9th Cir. 2022) (quotation marks and citation omitted). Indeed, service awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *accord Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (noting their function as "payments to class representatives for their service to the class in bringing the lawsuit"); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("named plaintiffs … are eligible for reasonable incentive payments").[2] The purpose of such awards is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Staton*, 327 F.3d at 977. In evaluating requests for service awards, courts consider the following factors: (1) the amount of time and effort spent by the class representatives on the litigation; (2) the degree to which the class representatives' efforts benefitted the class; (3) the personal difficulties

---

[2] California law also permits service awards to reasonably compensate plaintiffs for undertaking and fulfilling a fiduciary duty to represent the absent class members. *See Cellphone Term. Fee Cases*, 186 Cal. App. 4th 1380, 1393-94 (2010); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 725-26 (2004); Manual for Complex Litigation (Fourth) § 21.62 (2004).

13

942527.6

[PROPOSED] FINAL ORDER (1) APPROVING CLASS ACTION SETTLEMENT, (2) GRANTING MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS, AND (3) GRANTING MOTION FOR CLASS REPRESENTATIVE PAYMENTS
CASE NO. 23-cv-02354-RS

encountered by the class representatives; (4) the duration of the litigation; (5) the risk to the class representatives in commencing suit, whether financial, reputational, or otherwise; and (6) whether the litigation has promoted important public policy. *Rodriguez*, 563 F.3d at 958-59; *Staton*, 327 F.3d at 977. The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

While the Court notes that the amounts sought are on the higher end of service awards typically approved in this District, *see e.g.*, *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 10719057, at *5 (N.D. Cal. Oct. 18, 2022), *aff'd*, 111 F.4th 1018 (9th Cir. 2024) (Seeborg, J.; finding $25,000 service award was "both comparable to similar awards in this District and reasonable considering Ms. Montera's experience participating in this case"), the Court acknowledges that these payments are compensation for the personal injuries and damages the Named Plaintiffs have suffered, not just as awards for the Class Representatives' services to the Class. The Court also credits Class Counsel's declaration that the individual payments requested here are lower than others Class Counsel have secured and had approved in similar pedestrian-right-of-way cases for the named plaintiffs' personal injuries.

Accordingly, the Court finds the requested individual payments of $35,000 to each Named Plaintiff appropriate given the time and effort Plaintiffs have expended on this matter, the reputational risks they faced, and their agreement to a broad release of claims for monetary damages.

## V.    CONCLUSION

For the foregoing reasons, the Parties' Joint Motion for Final Approval of Class Action Settlement is GRANTED, Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs in the amount of $2,008,000 is GRANTED, and Plaintiffs' Motion for Class Representative Payments of $35,000 to each Named Plaintiff is GRANTED.

**IT IS SO ORDERED.**

Dated: December 4, 2025

_____
Richard Seeborg
Chief United States District Judge

14

[PROPOSED] FINAL ORDER (1) APPROVING CLASS ACTION SETTLEMENT, (2) GRANTING MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS, AND (3) GRANTING MOTION FOR CLASS REPRESENTATIVE PAYMENTS
CASE NO. 23-cv-02354-RS

942527.6